OPINION OF THE COURT
Alexander, J.
 The Appellate Division has determined that section 1180 of the Public Authorities Law, as amended by section 1 of chapter 862 of the Laws of 1981, and section 2 of said chapter are *493 constitutional, but that the method employed by defendant, Buffalo Sewer Authority (BSA), to determine sewer rents is unauthorized by that statute. We agree that the statute, as amended, is constitutional, but disagree that the method used by BSA to determine sewer rents is unauthorized.
BSA was created pursuant to chapter 349 of the Laws of 1935. This legislative act authorized BSA to “establish a schedule of rates, rentals or charges, to be called ‘Sewer rents,’ to be collected from all real property served by its facilities.” The statute further provided that “[s]uch sewer rents may be based upon either the consumption of water on premises connected with such facilities, making due allowances for commercial use of water, the number and kind of plumbing fixtures connected with such facilities, or the number of persons served by such facilities, or may be determined by the authority on any other equitable basis.” Since 1938, BSA has employed a two-part formula for the computation of sewer rents. One component is based on the water consumption of the premises serviced, the number and kind of fixtures connected to the facilities and the number of persons served. The other is based upon the assessed value of the real property served — an ad valorem component. Historically, BSA has exempted from this ad valorem component real property in the City of Buffalo that is exempt from real estate taxation. This exemption has not been granted, however, to real property exempted from taxation pursuant to the Private Housing Finance Law and the Public Housing Law.
Plaintiff, Elmwood-Utica Houses, Inc., is organized under article 2 of the Private Housing Finance Law and is granted a limited exemption from real estates taxes pursuant to that law (Private Housing Finance Law § 33).[1] Thus, it is not exempted by BSA from the ad valorem component of the sewer rent.
Since 1975, Elmwood-Utica has withheld payment of the ad valorem portion of its sewer rent, claiming that BSA had no statutory authority to exempt any users of its facilities from sewer rentals. Elmwood-Utica’s claim in this regard found support in an opinion of Buffalo’s Corporation Counsel, issued in 1975 and reaffirmed in 1979, which advised BSA that it could not legally “exempt any property served by its facilities from all or part of its sewer rents”.
*494 In order to clarify its authority to assess sewer rents in the manner it had employed for some 40 years and to obtain explicit authorization for that method, BSA took steps in 1979 to have the Legislature amend section 1180 of the Public Authorities Law. This purpose was accomplished in the enactment of chapter 862 of the Laws of 1981.[2]
Section 1 of the amendment created a specific statutory exemption from the ad valorem component of the sewer rent assessment for those properties that are exempt from real property taxation pursuant to enumerated sections of article 4 of the Real Property Tax Law. They comprise the same class of properties that BSA had historically exempted from the ad valorem component of its sewer rents, but which nevertheless remained subject to the user component of the sewer rent assessment. In addition to creating an express statutory exemption in section 1, the Legislature provided in section 2 of the 1981 enactment that: “All actions heretofore taken and proceedings had by the Buffalo sewer authority in granting exemption from ad valorem sewer rents granted properties exempt from real property taxes are hereby legalized, validated, ratified and confirmed.”
Following notification by BSA of its delinquency, Elmwood-Utica commenced this article 78 proceeding in which it contended that chapter 862 of the Laws of 1981 is unconstitutional and that BSA’s method of computing the sewer rent is unauthorized. Special Term converted the proceeding into a declaratory judgment action, denied BSA’s summary judgment motion and ordered that discovery proceed. On appeal to the Appellate Division, all of Elmwood-Utica’s claims were rejected except the claim that BSA lacked statutory authority to exempt any property from sewer rent assessments prior to July 31, 1981, and that its actions in so doing were ultra vires.
The Appellate Division upheld the constitutionality of chapter 862 of the Laws of 1981, but found that BSA’s method of assessing sewer rents was unauthorized by section 1180. The court viewed the 1981 amendment as not requiring the use of an ad valorem component in computing sewer rents, but merely *495 providing that if such component were used it could not be assessed against certain specified properties. The court held that the amendment did not affect “the requirement that sewer rents ‘be collected from all real property’ on an ‘equitable basis’, [and t]hus defendant is left free, as it was prior to the amendment, to determine sewer rent charges against serviced properties on any basis which is fair and equitable to all users” (96 AD2d, at p 179). BSA’s contention that section 2 of chapter 862 of the Laws of 1981 validated its long-established practice of charging tax-exempt properties only that component based upon water consumption was rejected. The court held that such a construction would render section 2 unconstitutional as sanctioning disproportionate sewer rents. The court found it unnecessary to determine the applicability of the Statute of Limitations to either Elmwood-Utica’s challenge to the sewer rent assessments or to the amendment’s constitutionality, citing CPLR 203 (c) and Press v County of Monroe (50 NY2d 695). Pursuant to leave granted by this court, BSA and intervenors, the Diocese of Buffalo, N. Y., Council of Churches and the Buffalo City Cemetery, Inc., appeal, and Elmwood-Utica cross-appeals, pursuant to CPLR 5601 (d), from the judgment entered in favor of BSA on its counterclaim.
We hold that section 1180 of the Public Authorities Law, as interpreted and applied by BSA, is not unconstitutional and that BSA’s method of assessing the ad valorem component of its sewer rents is authorized by that statute. Legislative enactments carry an exceedingly strong presumption of constitutionality, and while this presumption is rebuttable, one undertaking that task carries a heavy burden of demonstrating unconstitutionality beyond a reasonable doubt (Maresca v Cuomo, 64 NY2d 242, 250; Lighthouse Shores v Town of Islip, 41 NY2d 7, 11). Elmwood-Utica has failed to carry this burden.
Where a statute is challenged as denying equal protection, and a “fundamental interest” or a “suspect” classification is not involved, the standard by which the classification is measured to determine whether or not it will pass constitutional muster is the “reasonable basis” test. Where the “ ‘classification has some “reasonable basis”, it does not offend the Constitution simply because the classification “is not made with mathematical nicety or because in practice it results in some inequality” ’ ” (Alevy v Downstate Med. Center, 39 NY2d 326, 332, quoting Dandridge v Williams, 397 US 471, 485). No argument is made, nor could any validly be made, that a “fundamental interest” or “suspect” classification is involved in BSA’s fixing of sewer *496 rents. Consequently, Public Authorities Law § 1180, as amended, and BSA’s interpretation of the statute in classifying properties that are subject to or exempt from the ad valorem sewer levy are to be tested by “a rational basis standard of review * * * [and i]f any conceivable state of facts will support the classification, said provisions will not be held violative of the equal protection clause” (Maresca v Cuomo, 64 NY2d 242, 250, supra).
In Watergate II Apts. v Buffalo Sewer Auth. (46 NY2d 52), we acknowledged that “the Public Authorities Law allows [BSA] to fix charges only for such services as it actually provides its customers” (id., at p 59), and that the charges were in the nature of fees that “had to bear a direct relationship to the cost of furnishing the water services.” We recognized, however, that in fixing those charges there is the possibility that formulae more sophisticated than those criteria expressly enumerated in Public Authorities Law § 1180 might be adopted by BSA pursuant to the “equitable basis” provision of the statute. We noted that the essential services supplied to the people of Buffalo by BSA were far more extensive and complex than merely providing water for current and predictable use. The services involved, among other things, the construction and maintenance of effluent and storm sewer lines, sewage collection and treatment facilities. We concluded that the “cost of these activities is bound to bear only limited direct relationship to the volume of water utilized by [a] particular consumer” (id., at p 60). In providing these extensive services, BSA was providing a governmental service (Public Authorities Law § 1191). Thus, it was providing a public benefit to the entire community, as well as an exclusive benefit to the individual properties.
In approving BSA’s use of the assessed valuation of real property in Buffalo as a basis for assessment of a portion of the sewer rent to help defray the cost of providing the public benefit, despite that it was not specifically authorized by the statute, we recognized that “[e]xact congruence between the cost of the services provided and the rates charged to particular customers is not required” (id., at p 59), and therefore that the statute’s “equitable basis” provision did not necessarily mean “equal basis”. Rather, we held that the inquiry should be “whether [BSA’s] formulae reflect reasonable and nonarbitrary interpretations of the statute”, noting that “discrepancies may have to be endured * * * so long as there exists some rational underpinning for the charges levied” (id.).
*497 Here the Legislature has conferred virtually unfettered power upon BSA to establish sewer rents, using the specific criteria enumerated in section 1180 and the general “other equitable basis” standards. In these circumstances, it is clear that the Legislature intended that BSA would fix sewer rents that, in its judgment, would best serve its economic and public policy goals, “including economic differentiations among its charges so long as there is not involved any of the invidious discriminations condemned by statute or Constitution, or some utterly arbitrary discrimination not related to economic considerations or some accepted public goal” (Carey Transp. v Triborough Bridge & Tunnel Auth., 38 NY2d 545, 550, remittitur amended 39 NY2d 806, cert denied 429 US 830). Rather than perceiving BSA’s long-standing policy of exempting the enumerated tax-exempt organizations from the ad valorem component of the sewer rents as an abuse of this discretion, the Legislature has specifically approved of the classification by including it in the amended statute.
We conclude that the classification employed here easily meets the rational basis test since entities that are tax exempt, such as governments and charitable and religious organizations, may properly be considered less able to pay for a sewer system, especially insofar as the system redounds to the common benefit of all property rather than to one specific parcel. This principle has been recognized often in the context of taxation and, although sewer rents are not taxes (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, supra), the same concerns are pertinent here. In addition, while all property values are enhanced by a sewer system, holders of tax-exempt properties may be in a different classification because generally they do not share the objective of commercial and residential property owners — the enjoyment of their property’s market appreciation and the realization of profit thereon upon resale.
For much the same reasons, we conclude that, as a matter of statutory interpretation, BSA’s long practice of exempting tax-exempt properties from the ad valorem component is a fair and rational application of the “equitable basis” test provided in section 1180. While classifications fixing different rates must relate to the benefits received (see, 11 McQuillin, Municipal Corporations § 31.30a, at 222 [3d rev ed]), here it cannot be said that governmental, charitable and religious institutions obtain the same value, in terms of over-all market appreciation, from the entire sewer system as commercial and residential property owners. Nor is it irrational to exempt them from those charges *498 designed, to defray the costs of the public benefit services supplied by BSA’s system.
Having concluded that BSA properly applied Public Authorities Law § 1180, we need not reach the issues regarding validity of the 1981 amendments, which simply, and explicitly, carry forward BSA’s prior interpretation.
Accordingly, the judgment appealed from, and the order of the Appellate Division brought up for review, should be modified, with costs to defendant and interveners, to the extent of declaring BSA’s method of calculating sewer rents valid, granting BSA’s motion for summary judgment on its counterclaim, and remitting the matter to Supreme Court for a determination of the amount of the sewer rent deficiencies of Elmwood-Utica for the period July 1,1975 to June 30,1982, together with appropriate interest, and as so modified, affirmed.

. It appears that Elmwood-Utica was organized some time prior to the 1977 amendments to section 33 of the Private Housing Finance Law and thus was exempted from local and municipal taxes for a limited period of time and to a maximum of 50% of the value of its real property.

. Section 1180, as amended, provides in part: “[T]he authority is authorized to establish a schedule of rates, rentals or charges, to be called ‘sewer rents,’ to be collected from all real property served by its facilities, except that no ad valorem sewer rent shall be assessed against real property exempt from real property taxes pursuant to subdivision one of section four hundred, sections four hundred four, four hundred six, four hundred twelve, four hundred eighteen, subdivision one of section four hundred twenty, sections four hundred forty-six, four hundred fifty-two, four hundred sixty-two and four hundred seventy-seven of the real property tax law” (amended language in italics).