87 N.Y.2d 136 (1995)
661 N.E.2d 961
638 N.Y.S.2d 388
Lehigh Portland Cement Company, Appellant,
v.
New York State Department of Environmental Conservation, Respondent.
Court of Appeals of the State of New York.
Argued October 18, 1995
Decided December 5, 1995.
Rapport, Meyers, Griffen & Whitbeck, Hudson (Victor M. Meyers of counsel), for appellant.
Dennis C. Vacco, Attorney-General, Albany (Lawrence A. Rappoport, Victoria A. Graffeo, Peter H. Schiff and James A. Sevinsky of counsel), for respondent.
Chief Judge KAYE and Judges TITONE and CIPARICK concur with Judge SMITH; Judge BELLACOSA dissents and votes to affirm in a separate opinion in which Judges SIMONS and LEVINE concur.
*138 SMITH, J.
The issue presented on this appeal is whether a declaratory judgment action was properly dismissed on the ground that plaintiff failed to exhaust administrative remedies. We conclude that the dismissal was improper because, in this case, the pursuit of administrative remedies would have been futile. Accordingly, we modify the order of the Appellate Division and remit this declaratory judgment action to the trial court for a determination on the merits of plaintiff's complaint.
Between August and November 1992, plaintiff submitted petitions to the Department of Environmental Conservation (DEC) pursuant to DEC's Beneficial Use Determination (BUD) program. The petitions sought permission to use waste materials as substitutes for raw materials in plaintiff's cement manufacturing processes. Upon the fulfillment of certain conditions, the BUD program permits the storage and use of solid waste materials, without a solid waste management facility permit, if those waste materials are incorporated into a marketable product, i.e., "beneficially used" (see, 6 NYCRR 360-1.15, formerly 6 NYCRR 360-1.2). Otherwise, the management, disposal and storage of nonhazardous solid waste may be handled only by solid waste management facilities. These facilities are subject to extensive regulation (see, 6 NYCRR part 360).
In March and July of 1993, plaintiff sent two demand letters to DEC stating that six of its pending BUD petitions would be deemed approved pursuant to the Uniform Procedures Act (UPA) unless DEC issued determinations on the petitions within five working days. The UPA provides specific time frames in which the DEC must notify permit applicants that *139 their applications are incomplete, hold hearings (where required), and issue decisions on applications (see, ECL 70-0109). "Permit" is defined by statute as "any permit, certificate, license or other form of department approval" (ECL 70-0105 [4]). The NYCRR applies UPA time frames to permit applications relating to the collection, treatment and disposal of refuse and other solid waste (see, ECL 70-0107, 70-0109).
DEC responded to plaintiff's demand letters by stating, in letters dated March 29, 1993 and July 15, 1993, that the UPA does not apply to BUD petitions. DEC's replies declared:
"A determination of beneficial use, as provided for in 6 NYCRR Part 360-1.2 (a) (5) [recodified and amended as 6 NYCRR 360-1.15], is a decision regarding the Department's jurisdiction to regulate an activity as a solid waste management facility. A request for a beneficial use determination is not an application for a permit. Such a request is not subject to the timeframes [sic] or any other provision of the Uniform Procedures Act. Consequently, your request for a decision under 6 NYCRR Part 621.9 (b) is not appropriate in this instance."
Both DEC responses were signed by DEC's Chief Permit Administrator.
After receiving DEC's reply letters, plaintiff commenced this declaratory judgment action in Supreme Court seeking a declaration that UPA time frames apply to BUD petitions, and deeming eight of plaintiff's petitions approved. Plaintiff then moved for summary judgment. DEC cross-moved to convert the action into a CPLR article 78 proceeding and to dismiss. DEC argued that its determination, that UPA time frames do not apply to BUD petitions, was rational. Alternatively, DEC sought a declaration that the UPA does not apply to the BUD program. In support of its cross motion, DEC submitted an affidavit from its Chief Permit Administrator stating:
"The Department has, since the promulgation of Part 360 on December 31, 1988, taken the position that the type of decisions which plaintiff sought was a determination in the first instance or a confirmation that the proposed uses of certain `solid waste' materials in a beneficial manner were exempt from the definition of `solid waste' and, therefore, exempt from the Department's extensive Part 360 regulations. Therefore, it is our view that *140 petitions for beneficial use determinations are similar to petitions for declaratory rulings. * * * In reviewing plaintiff's letter demands, my staff consulted its counterpart staff in the Department's Region 4 office and also the Department's Division of Legal Affairs. As a result of these consultations, I affirmed the Department's longstanding position that petitions for beneficial use determinations are not subject to the requirements of the UPA."
While the declaratory judgment action was pending, the DEC completed processing, and issued decisions on, the eight BUD petitions specified in plaintiff's complaint. The DEC granted one petition, requested additional information on another, and denied six petitions. Plaintiff commenced a separate article 78 proceeding seeking annulment of the six denials.
While the article 78 proceeding was pending, the Supreme Court in the declaratory judgment action, sua sponte, dismissed plaintiff's complaint on the ground that plaintiff failed to exhaust administrative remedies. The Supreme Court held that plaintiff should have sought a declaratory ruling from the DEC on whether the UPA applied to BUD petitions before commencing this present action (see, State Administrative Procedure Act § 204; 6 NYCRR part 619). Plaintiff appealed the dismissal of its action to the Appellate Division. During the appeal, the article 78 proceeding was dismissed on the ground that DEC had not acted arbitrarily, capriciously or irrationally in denying the six BUD petitions (see, Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation, 161 Misc 2d 652). Plaintiff did not appeal the dismissal of its article 78 petition. Subsequently, the Appellate Division affirmed Supreme Court's dismissal of the declaratory judgment action.
Plaintiff argues that the State Administrative Procedure Act does not require the pursuit of administrative remedies before relief may be sought in Supreme Court, and that in this case, pursuing a declaratory ruling from the DEC would have been futile. Generally, "one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law" (Watergate II Apts. v Buffalo Sewer Auth., 46 N.Y.2d 52, 57). However, exhaustion of administrative remedies is not required where an agency's action is challenged as beyond its grant of power or when resort to an administrative remedy would be futile (Watergate, supra, at 57). Although a court may dismiss a declaratory judgment action in a proper exercise of discretion, *141 the mere existence of other adequate remedies does not mandate dismissal (CPLR 3001; Matter of Morgenthau v Erlbaum, 59 N.Y.2d 143, 148).
Here, the DEC clearly and unequivocally stated its long-established position that UPA time frames do not apply to BUD petitions, both in correspondence with plaintiff and through the affidavit of the Chief Permit Administrator. The Chief Permit Administrator, who consulted with counterparts in DEC's Region 4 office and with DEC's Division of Legal Affairs, "affirmed" DEC's "longstanding position" that the UPA does not apply to BUD petitions. DEC has taken this position since the promulgation of part 360 of the NYCRR, which became effective as of December 31, 1988.[1] Consequently, ever since the inception of the BUD program, the DEC, as a matter of policy on at least a regional basis,[2] has processed BUD petitions in accordance with the view that compliance with UPA time frames was not necessary.
DEC arrived at a definitive position which concretely affected the status of plaintiff's BUD petitions and then communicated this position to plaintiff. As a result of DEC's actions, plaintiff continued to remain in the dark as to when it could expect DEC to finish processing its BUD petitions. However, plaintiff received notification that no matter how long the processing took, the BUD petitions could not be deemed approved because, according to the DEC, the UPA time frames did not apply. Under the particular circumstances of this case, any resort by plaintiff to administrative remedies would have been futile.
The evidence before the Supreme Court indicated that the Chief Permit Administrator's letter accurately stated longstanding agency policy. The Supreme Court erred because it required plaintiff to pursue administrative remedies when the evidence demonstrated that resort to administrative remedies would have been futile.
Supreme Court's reliance on New York Inst. for Educ. of Blind v United Fedn. of Teachers' Comm. (83 AD2d 390, affd 57 N.Y.2d 982) was misguided as that case differed markedly from the circumstances here. In New York Inst., we affirmed *142 the dismissal of plaintiff's declaratory judgment complaint for failure to exhaust administrative remedies because the New York State Labor Relations Board had not passed on the issue of whether plaintiff, a State-supported private school, was a public employer under article 14 of the Civil Service Law. Resort to administrative remedies there would not have been futile because the administrative agency did not issue any sort of determination or statement of policy on the issue in dispute.
The dissent also relies on inapposite authority. In Matter of Kirk v Bahou (73 AD2d 770, affd 51 N.Y.2d 867) petitioners sought the annulment of civil service examination results and an injunction preventing the Civil Service Commission from certifying or appointing anyone from an eligible list drawn from the civil service examination, even though the Commission had not determined whether it would uphold the results of the examination in dispute. Petitioners did not present any evidence that the Commission had decided to certify a list based on the examination results, offering instead, a statement by one petitioner that "I believe" the Commission has already decided this matter. Under these circumstances, resort to administrative remedies would not have been futile, and the petition was dismissed for failure to exhaust administrative remedies.
Matter of Grattan v Department of Social Servs. (131 AD2d 191, lv denied 70 N.Y.2d 616) involved an attempt by the State Department of Health to recover Medicaid overpayments to the Albany County Health Department. The Albany County Health Department sought an injunction against the recoupment on the ground that too much time had elapsed between the alleged overpayments and the decision to recoup. Finding no evidence in the record which clearly indicated that the State Department of Health had predetermined the issue of timeliness, or construed the relevant regulation in a manner which would require an adverse result against the Albany County Health Department in an administrative hearing, the Appellate Division held that futility of pursuing administrative remedies had not been demonstrated.
Unlike New York Inst., Bahou or Grattan the administrative agency here clearly and unequivocally stated its long-standing position, in effect since the inception of the BUD program, that the UPA does not apply to BUD petitions. Moreover, DEC implemented this policy on at least a regional basis. Nothing in the record supports the dissent's characterization of the Chief Permit Administrator as an "administrative functionary." *143 Indeed, the NYCRR suggests that the Chief Permit Administrator is a policy-making employee empowered to act on behalf of the DEC Commissioner on issues relating to permit application processing. The NYCRR provides that:

"Chief permit administrator means an employee of the department located in the main office of the department and designated to act on the commissioner's behalf in carrying out [part 621]"[3] (6 NYCRR 621.1 [b]).
Even if we assume that the Chief Permit Administrator could not set agency policy, nothing indicates that the letters sent to plaintiff did not accurately reflect agency policy (see, Compass Adjusters & Investigators v Commissioner of Taxation & Fin., 197 AD2d 38).
This case does not involve a new, unarticulated or unsettled policy issue within the administrative agency, a vague or unclear articulation of agency policy, a case-specific determination on unique facts, decisions issued by low-level agency employees, or any other circumstance which calls for a hearing so that a clearer formulation of and the rationales for agency policy may be fully aired. The plaintiff here could not hope to obtain a clearer definition or resolution of issues than already provided by the DEC.
Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the complaint and, as so modified, affirmed.
BELLACOSA, J. (dissenting).
We would affirm the Appellate Division order affirming the dismissal of the complaint seeking declaratory judgment. The key question is whether plaintiff-appellant Lehigh exhausted its administrative remedies before pursuing judicial relief. That issue turns on whether the so-called futility exception to the doctrine of the exhaustion of administrative remedies applies in this case. We agree with both lower courts that the exhaustion of remedies principle, not its exception, should control.
Lehigh wished to secure a Beneficial Use Determination (BUD) under ECL article 70 and 6 NYCRR part 621. In order to accelerate the process, it invoked the provisions of the Uniform Procedures Act (ECL 70-0101 et seq.), which authorizes *144 a procedure to induce prompt administrative determinations of permit applications. Lehigh sent five-day demand letters to the Department of Environmental Conservation (DEC), as authorized by 6 NYCRR 621.9 (b) and ECL 70-0109 (3) (b). DEC responded with letters from its Chief Permit Administrator describing DEC's "longstanding position" under the Uniform Procedures Act and stating that BUDs were not covered because a BUD "is not an application for a permit." The Administrator added in the letters that a BUD relates only to "the Department's jurisdiction to regulate an activity as a solid waste management facility."
Rather than availing itself of procedures for review and relief from the Department under State Administrative Procedure Act (SAPA) § 204, Lehigh instead shifted immediately and directly to a judicial field of engagement. It sought declaratory relief from Supreme Court that BUDs were "permits" as a matter of law. Lehigh argued that DEC's failure to act in a timely manner on its BUD petitions should result in automatic approvals under the Uniform Procedures Act (ECL 70-0109).
Supreme Court denied Lehigh's summary judgment motion and instead dismissed its action because of Lehigh's failure to seek and exhaust administrative opportunities for relief as prescribed in SAPA § 204 and 6 NYCRR part 619. The Appellate Division unanimously affirmed (210 AD2d 670), noting that the letters responding to Lehigh's initial applications should not be treated as the functional equivalent of a formal determination by the State Department of Environmental Conservation.
The putative "futility" exception to the overarching exhaustion of administrative remedies doctrine was mentioned by this Court in Watergate II Apts. v Buffalo Sewer Auth. (46 N.Y.2d 52, 57). It was not part of the ratio decidendi there and has not been further explained or explored by this Court. Because the exception is necessarily replete with factual nuance, courts should be wary of elevating the concept of "futility" to a matter-of-law judicial outlet by recognition and application of it in sparsely or less than definitively developed records. Otherwise, the narrow exception could quickly and voluminously swallow the prudent long-standing rule itself and be subjected to widely varying availability and application. The exhaustion doctrine, after all, is rooted in the well-settled, sensitive distribution of branches of governmental authority. It also underscores the goal of preserving finite judicial resources for invocation only as to relatively final matters *145 and as a matter of last recourse (see, 2 Davis and Pierce, Administrative Law § 15.2, at 309 [3d ed 1994]).
We conclude that the "futility" exception should be developed and applied sparingly in those instances "where it persuasively appears that the final administrative decision has in fact been reached, and that nothing remains but the preparation and entry of the formal order" (2 Cooper, State Administrative Law, at 581 [1965] [emphasis added]). That cannot be said of the letters from the Permit Administrator in this case. Not only is it clear that the Permit Administrator's function is expressly limited to processing permit applications (see, 6 NYCRR 621.1 [b]), but it is also unassailable that the letters were not formal or final determinations of the DEC itself or that the Department ever adopted or ratified the assertions in the Administrator's letter. Consultation and in-house soundings by an administrative functionary do not represent, and should not be treated as, the legally functional equivalent of departmental policy in general or as applied to the particular circumstance (majority opn, at 141, 143).
Additionally, there may be cases where a particular step in the administrative process would be demonstratively unavailing because of a lack of power in the agency or reviewing body to make the requisite decision (see, Bethesda Hosp. Assn. v Bowen, 485 US 399). That, too, cannot be said of this case (see also, 2 Am Jur 2d, Administrative Law, § 511, at 497, n 53 [citations omitted]). "[G]eneral statements by the agency [through its agents or subordinates] as to its contemplated action" ought not ordinarily to qualify for such a significant exception to such an important standing-like doctrine (2 Cooper, op. cit., at 580). The United States Supreme Court has persuasively observed that "the long settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted" (Myers v Bethlehem Shipbuilding Corp., 303 US 41, 50-51).
By our analysis and authorities and in our respectful view, the letters sent to Lehigh by the Chief Permit Administrator are not a blueprint for the exceptional "futility" channel to the courts that would allow Lehigh to dispense with the generally necessary predicate of pursuing avenues of review and redress available from the DEC itself under SAPA. Lehigh presented no demonstrable basis that the DEC would be bound by or estopped by the Permit Administrator's letters or that the agency itself had prejudged or promulgated anything formally *146 concerning the dispositive law issue as it applied to the particular permit applications (see, Matter of Grattan v Department of Social Servs., 131 AD2d 191, 193 ["(T)here is nothing in the record which clearly indicates that respondent has predetermined the issue of timeliness"], lv denied 70 N.Y.2d 616; Matter of Kirk v Bahou, 73 AD2d 770, 771 [rejecting futility claim based on bare allegation in petition that "I believe" the Civil Service Commission had already decided the issue], affd for reasons stated below 51 N.Y.2d 867).
Significantly, the majority's use of a DEC litigation affidavit injects another troublesome feature to the dispositional analysis of this case. This is a form of procedural bootstrapping that reformulates facts not available on the question of claimed "futility" at the time Lehigh shifted to judicial intervention. "Futility" should be determined by objective analysis and data in the prelitigation setting and fact pattern. Courts should not engage in a postlitigation recharacterization of the basis for any applicant short-circuiting administrative channels and the threshold exhaustion rubric. It cannot fairly be said on this record that at the time Lehigh decided to jump to judicial relief that "DEC [had] arrived at a definitive position which concretely affected the status of plaintiff's BUD petitions" (majority opn, at 141 [emphasis added]). The Chief Permit Administrator's letters, viewed as of the time Lehigh received them, were not actions or determinations by the Department. The governing, published regulation of DEC fixing the letter writer's level of authority showed a circumscribed delegation to process the Commissioner's part 621 responsibilities, not to make DEC policy involving such an important jurisdictional and classification matter (6 NYCRR 621.1 [b]). The letters also lacked definiteness and finality in any administrative adjudicative sense. Under the circumstances presented by this case, Lehigh gained no justification to bypass, by its own interpretation and choice, the established, promulgated and formal procedures for review and relief in the first instance from the administrative agency itself.
Lehigh's effort to nudge the bureaucracy with respect to what it may have personally perceived as red-tape delays and a foregone conclusion may be understandable. That general societal skepticism, however, cannot form a sustainable legal basis for everyone who deals with administrative agencies to divert matters up to court levels and bypass regular agency processes. Under the holding of this case, future applicants dealing with administrative agencies may chart their own *147 courses under the futility exception. The adverse precedential implications of countenancing such self-help and invocation of judicial intervention will be procedurally disruptive and exceedingly burdensome in the face of the multitudinous permutations of communications uttered, in writing and orally, by various bureaucracies that speak with many and varying voices and styles and at many levels below formal departmental adjudicatory resolution.
Therefore, we believe that Supreme Court and the Appellate Division properly dismissed Lehigh's end run of the DEC. For the stated policy reasons, as well as for more orderly, regular and definitive protocols, to be evenhandedly applied to all entities interacting with administrative agencies, we believe the lower courts correctly adhered to the governing doctrine.
The expansion of the futility exception in this case is not doctrinally sound nor justifiably applied in these circumstances and on this record. If all it takes to go to court on such matters is a subjective sense of futility by an unhappy recipient of a letter from a bureaucrat, then not much is left to the exhaustion of administrative remedies doctrine (see, Young Men's Christian Assn. v Rochester Pure Waters Dist., 37 N.Y.2d 371, 375). Thus, we respectfully dissent and vote to affirm the order of the Appellate Division.
Order modified, etc.
NOTES
[1] 6 NYCRR part 360 regulates all solid waste management facilities, except for hazardous waste management facilities (see, 6 NYCRR 360-1.1).
[2] The Chief Permit Administrator's affidavit stated that "regional staff" and "staff in the Department's Region 4 office" were consulted before the Department's long-standing position was affirmed.
[3] Part 621 governs the procedures used in processing permit applications as required by certain sections of the ECL (see, 6 NYCRR part 621-Introduction).