Bellacosa, J.
(dissenting). We would affirm the Appellate Division order affirming the dismissal of the complaint seeking declaratory judgment. The key question is whether plaintiff-appellant Lehigh exhausted its administrative remedies before pursuing judicial relief. That issue turns on whether the so-called futility exception to the doctrine of the exhaustion of administrative remedies applies in this case. We agree with both lower courts that the exhaustion of remedies principle, not its exception, should control.
Lehigh wished to secure a Beneficial Use Determination (BUD) under ECL article 70 and 6 NYCRR part 621. In order to accelerate the process, it invoked the provisions of the Uniform Procedures Act (ECL 70-0101 et seq.), which authorizes *144 a procedure to induce prompt administrative determinations of permit applications. Lehigh sent five-day demand letters to the Department of Environmental Conservation (DEC), as authorized by 6 NYCRR 621.9 (b) and ECL 70-0109 (3) (b). DEC responded with letters from its Chief Permit Administrator describing DEC’s "longstanding position” under the Uniform Procedures Act and stating that BUDs were not covered because a BUD "is not an application for a permit.” The Administrator added in the letters that a BUD relates only to "the Department’s jurisdiction to regulate an activity as a solid waste management facility.”
Rather than availing itself of procedures for review and relief from the Department under State Administrative Procedure Act (SAPA) § 204, Lehigh instead shifted immediately and directly to a judicial field of engagement. It sought declaratory relief from Supreme Court that BUDs were "permits” as a matter of law. Lehigh argued that DEC’s failure to act in a timely manner on its BUD petitions should result in automatic approvals under the Uniform Procedures Act (ECL 70-0109).
Supreme Court denied Lehigh’s summary judgment motion and instead dismissed its action because of Lehigh’s failure to seek and exhaust administrative opportunities for relief as prescribed in SAPA § 204 and 6 NYCRR part 619. The Appellate Division unanimously affirmed (210 AD2d 670), noting that the letters responding to Lehigh’s initial applications should not be treated as the functional equivalent of a formal determination by the State Department of Environmental Conservation.
The putative "futility” exception to the overarching exhaustion of administrative remedies doctrine was mentioned by this Court in Watergate II Apts. v Buffalo Sewer Auth. (46 NY2d 52, 57). It was not part of the ratio decidendi there and has not been further explained or explored by this Court. Because the exception is necessarily replete with factual nuance, courts should be wary of elevating the concept of "futility” to a matter-of-law judicial outlet by recognition and application of it in sparsely or less than definitively developed records. Otherwise, the narrow exception could quickly and voluminously swallow the prudent long-standing rule itself and be subjected to widely varying availability and application. The exhaustion doctrine, after all, is rooted in the well-settled, sensitive distribution of branches of governmental authority. It also underscores the goal of preserving finite judicial resources for invocation only as to relatively final mat *145 ters and as a matter of last recourse (see, 2 Davis and Pierce, Administrative Law § 15.2, at 309 [3d ed 1994]).
We conclude that the "futility” exception should be developed and applied sparingly in those instances "where it persuasively appears that the final administrative decision has in fact been reached, and that nothing remains but the preparation and entry of the formal order” (2 Cooper, State Administrative Law, at 581 [1965] [emphasis added]). That cannot be said of the letters from the Permit Administrator in this case. Not only is it clear that the Permit Administrator’s function is expressly limited to processing permit applications (see, 6 NYCRR 621.1 [b]), but it is also unassailable that the letters were not formal or final determinations of the DEC itself or that the Department ever adopted or ratified the assertions in the Administrator’s letter. Consultation and in-house soundings by an administrative functionary do not represent, and should not be treated as, the legally functional equivalent of departmental policy in general or as applied to the particular circumstance (majority opn, at 141, 143).
Additionally, there may be cases where a particular step in the administrative process would be demonstratively unavailing because of a lack of power in the agency or reviewing body to make the requisite decision (see, Bethesda Hosp. Assn. v Bowen, 485 US 399). That, too, cannot be said of this case (see also, 2 Am Jur 2d, Administrative Law, § 511, at 497, n 53 [citations omitted]). "[G]eneral statements by the agency [through its agents or subordinates] as to its contemplated action” ought not ordinarily to qualify for such a significant exception to such an important standing-like doctrine (2 Cooper, op. cit., at 580). The United States Supreme Court has persuasively observed that "the long settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted” (Myers v Bethlehem Shipbuilding Corp., 303 US 41, 50-51).
By our analysis and authorities and in our respectful view, the letters sent to Lehigh by the Chief Permit Administrator are not a blueprint for the exceptional "futility” channel to the courts that would allow Lehigh to dispense with the generally necessary predicate of pursuing avenues of review and redress available from the DEC itself under SAPA. Lehigh presented no demonstrable basis that the DEC would be bound by or estopped by the Permit Administrator’s letters or that the agency itself had prejudged or promulgated anything formally *146 concerning the dispositive law issue as it applied to the particular permit applications (see, Matter of Grattan v Department of Social Servs., 131 AD2d 191, 193 ["(T)here is nothing in the record which clearly indicates that respondent has predetermined the issue of timeliness”], lv denied 70 NY2d 616; Matter of Kirk v Bahou, 73 AD2d 770, 771 [rejecting futility claim based on bare allegation in petition that "I believe” the Civil Service Commission had already decided the issue], affd for reasons stated below 51 NY2d 867).
Significantly, the majority’s use of a DEC litigation affidavit injects another troublesome feature to the dispositional analysis of this case. This is a form of procedural bootstrapping that reformulates facts not available on the question of claimed "futility” at the time Lehigh shifted to judicial intervention. "Futility” should be determined by objective analysis and data in the prelitigation setting and fact pattern. Courts should not engage in a postlitigation recharacterization of the basis for any applicant short-circuiting administrative channels and the threshold exhaustion rubric. It cannot fairly be said on this record that at the time Lehigh decided to jump to judicial relief that"DEC [had] arrived at a definitive position which concretely affected the status of plaintiff’s BUD petitions” (majority opn, at 141 [emphasis added]). The Chief Permit Administrator’s letters, viewed as of the time Lehigh received them, were not actions or determinations by the Department. The governing, published regulation of DEC fixing the letter writer’s level of authority showed a circumscribed delegation to process the Commissioner’s part 621 responsibilities, not to make DEC policy involving such an important jurisdictional and classification matter (6 NYCRR 621.1 [b]). The letters also lacked definiteness and finality in any administrative adjudicative sense. Under the circumstances presented by this case, Lehigh gained no justification to bypass, by its own interpretation and choice, the established, promulgated and formal procedures for review and relief in the first instance from the administrative agency itself.
Lehigh’s effort to nudge the bureaucracy with respect to what it may have personally perceived as red-tape delays and a foregone conclusion may be understandable. That general societal skepticism, however, cannot form a sustainable legal basis for everyone who deals with administrative agencies to divert matters up to court levels and bypass regular agency processes. Under the holding of this case, future applicants dealing with administrative agencies may chart their own *147 courses under the futility exception. The adverse precedential implications of countenancing such self-help and invocation of judicial intervention will be procedurally disruptive and exceedingly burdensome in the face of the multitudinous permutations of communications uttered, in writing and orally, by various bureaucracies that speak with many and varying voices and styles and at many levels below formal departmental adjudicatory resolution.
Therefore, we believe that Supreme Court and the Appellate Division properly dismissed Lehigh’s end run of the DEC. For the stated policy reasons, as well as for more orderly, regular and definitive protocols, to be evenhandedly applied to all entities interacting with administrative agencies, we believe the lower courts correctly adhered to the governing doctrine.
The expansion of the futility exception in this case is not doctrinally sound nor justifiably applied in these circumstances and on this record. If all it takes to go to court on such matters is a subjective sense of futility by an unhappy recipient of a letter from a bureaucrat, then not much is left to the exhaustion of administrative remedies doctrine (see, Young Men’s Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371, 375). Thus, we respectfully dissent and vote to affirm the order of the Appellate Division.
Chief Judge Kaye and Judges Titone and Ciparick concur with Judge Smith; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judges Simons and Levine concur.
Order modified, etc.