■ In the Matter of HORTON MEMORIAL HOSPITAL, INC., Respondent, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants. — Appeal from a judgment of the Supreme Court at Special Term (Conway, J.), entered June 13, 1983 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Commissioner of Health revising petitioner's 1980 and 1981 Medicaid reimbursement rates. ¶ Petitioner, a participant in the Medicaid program, is reimbursed for services rendered to eligible Medicaid patients at rates established by respondent Commissioner of Health pursuant to section 2807 of the Public Health Law. Rates are computed on the basis of actual costs incurred in the year two years prior to the reimbursement year (referred to as the base year) and are trended forward for inflation. Section 86-1.17 (a) (4) of title 10 of the Official Compilation of Codes, Rules and Regulations of the State of New York (10 NYCRR 86-1.17 [a] [4]) authorizes the Commissioner to grant prospective revisions of certified reimbursement rates for, among other things: "significant changes or increases in the overall operating costs of a medical facility resulting from capital renovation, expansion, replacement or the inclusion of new programs, staff or services approved for the medical facility by the commissioner". In 1979, with the consent and approval of respondents, petitioner began a large-scale capital project, resulting in expansion of its facility and significant increases in its operating costs. In an attempt to recoup these costs, petitioner thereafter applied for revision of its 1980 and 1981 Medicaid reimbursement rates. On May 15, 1981, its petition directed at the 1980 rate was denied by respondent Department of Health on the ground that the department does not recognize increased operating costs until they have become part of the base year. ¶ In September, 1981, petitioner brought a CPLR article 78 proceeding challenging the denial of its 1980 rate appeal. The thrust of this first proceeding was that respondents' policy of refusing to adjust Medicaid reimbursement rates until they have become part of the base year was arbitrary and capricious because (a) it violated the commissioner's own rules and regulations, (b)

Medicaid reimbursement rates are granted by the Federal Government as the result of significant changes or increases in over-all operating costs, (c) Blue Cross had approved petitioner's rate revision application based upon the latter's increased operating costs, and (d) adjustments in reimbursement rates made to hospitals by Blue Cross as a result of significant increases in over-all operating costs occasioned by capital expansion have been granted by respondents while such adjustments have been denied with respect to Medicaid rates. ¶ Special Term, in annulling the Commissioner's decision, held that since respondents had in similar circumstances certified revisions to the Blue Cross reimbursement rate pursuant to 10 NYCRR 86-1.17, denial of such a revision with respect to Medicaid rates was irrational. In a resettled order dated March 3, 1982, which was not appealed, Special Term remitted the matter to respondents "for a substantive review of petitioner's operating costs for the year 1980 and a determination as to what portion of them are allowable and reimbursable within the contemplation of the applicable rules and regulations".* ¶ After some delay, resulting in a now discontinued contempt proceeding by petitioner against respondents, respondents notified petitioner of additional revisions in its 1980 and 1981 Medicaid reimbursement rates. These revisions, though based on the same increased operating costs used to justify the revised Blue Cross rates, were less than one half the increase allowed for the Blue Cross rates. On March 24, 1983, petitioner, believing that the revised rates were not in accordance with Special Term's resettled order of March 3, 1982, commenced the instant CPLR article 78 proceeding. A month earlier, petitioner had requested administrative hearings in regard to those portions of its 1980 and 1981 rate adjustment appeals that had been denied. Those administrative hearings are now pending. ¶ Petitioner's March 24, 1983 petition, seeking a judgment annulling the revised rates for 1980 and 1981 and directing the Commissioner to certify those rates in the same amount as those certified by respondents for payment by Blue Cross or directing respondents to recalculate petitioner's revised rates in light of the rates certified by Blue Cross and consistent with 10 NYCRR 86-1.17, was met by respondents' cross motion to dismiss the petition because petitioner had not exhausted its administrative remedies. When Special Term annulled the revisions and directed respondents, as allegedly instructed in its March 3, 1982 order, "to certify revised Medicaid rates for petitioner in the same amount as those certified by respondents for payment by Blue Cross", this appeal followed. ¶ Respondents contend, and we agree, that Special Term did not issue any such direction in its first order. Essentially, the order of March 3, 1982 declared that the Commissioner had failed to comply with his own regulations in that there was no basis for distinguishing between Blue Cross rates and Medicaid rates when determining whether the petitioning facility has in fact incurred significant increases in its over-all operating costs as a result of capital expansion within the meaning of 10 NYCRR 86-1.17. Although Special Term in its underlying decision embraced petitioner's assertion that there is no basis for distinguishing Blue Cross and Medicaid reimbursement rates, neither the resettled order entered thereon nor the decision itself attempts to analyze or comment on the methodology of computing those rate increases; those methodologies were not even set forth in the papers. Furthermore, it is not without significance that the resettled order did not direct respondents to increase petitioner's Medicaid reimbursement in the same amount as that awarded to Blue Cross. Hence that order is not *res judicata* or law of the case for the proposition that petitioner is entitled to the same dollar increase as petitioner suggests; nor does it furnish a basis for collaterally estopping respondent from asserting a difference in

---

* The parties have stipulated that final determination of this matter will also resolve the issue as to the 1981 rates.

methodology of computing Blue Cross and Medicaid rates, for that issue was never conclusively decided in the first article 78 proceeding. Parenthetically, we note that petitioner acknowledged that the rates of reimbursement for equivalent services prior to revision were not in all respects identical for Blue Cross and Medicaid. Inasmuch as petitioner has not exhausted its administrative remedies, a reversal is dictated and the petition should be dismissed. ¶ Judgment reversed, on the law, with costs, and petition dismissed. Main, Yesawich, Jr., and Harvey, JJ., concur.

Mahoney, P. J., and Mikoll, J., dissent and vote to affirm in the following memorandum by Mikoll, J. Mikoll, J. (dissenting). We respectfully dissent. Based on collateral estoppel, respondents are foreclosed from raising anew in the instant CPLR article 78 proceeding the issue of whether a basis in law exists for distinguishing between the treatment accorded petitioner's Medicaid reimbursement rate and its Blue Cross rate with respect to costs associated with its capital construction project (*Schwartz v Public Administrator*, 24 NY2d 65). This issue was heard and fully litigated in a prior CPLR article 78 proceeding decided in January, 1982. In its underlying decision, Special Term clearly stated that respondents violated their own rules and regulations in failing to accord petitioner interim relief through a rate revision for the increased operating costs. It further held that Blue Cross rate revisions have been approved for capital expansion under the same regulation (10 NYCRR 86-1.17 [a] [4]) and that respondents have failed to explain how this policy with regard to Blue Cross rates is distinguishable from Medicaid rates. The resettled order of March 3, 1982 remits the matter back for determination of reimbursable costs within the contemplation of the applicable rule and regulation. Inferentially, the remittal was for a calculation in accordance with the underlying decision, i.e., granting petitioner the same Medicaid rates as Blue Cross rates. ¶ Respondents' belated contention that there is a basis in law for distinguishing between rates accorded under Blue Cross and Medicaid is foreclosed in that the methodology of rate formulation was an integral part of Special Term's initial decision which held that respondents had violated their own rules and regulations. Respondents addressed the issue in the first proceeding by claiming error in the approval of the Blue Cross rate revision. That they failed to elaborate on any methodology differences does not give rise to a right to now address the subject more fully. All the requirements of collateral estoppel have been met. ¶ Special Term also appropriately denied respondents' motion to dismiss the petition for failure to exhaust administrative remedies. When petitioner applied to have its Medicaid reimbursement rate revised and was met with a denial, it appealed the determination administratively. The hearing officer denied petitioner's appeal, holding that no issue of fact was presented and that the denial exhausted all of petitioner's administrative remedies. Petitioner then proceeded to judicial review which culminated in the March 3, 1982 resettled order. Respondents' failure to comply with that order precipitated the instant CPLR article 78 proceeding. The instant matter deals only with an issue of law and further administrative appeal is futile (see *Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52). Respondents, having been ordered to change petitioner's rates, cannot resurrect a factual issue where none was found to exist in the initial proceedings. ¶ The judgment granting petitioner's application should be affirmed. [112 Misc 2d 154.]