In the Matter of AMSTERDAM NURSING HOME CORPORATION, Respondent, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Appellants.

Third Department, March 3, 1988

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for appellants.

*Cadwalader, Wickersham & Taft (Peter G. Bergmann* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Petitioner was incorporated as a not-for-profit corporation in 1971 for the purpose of obtaining mortgage financing through Public Health Law article 28-A (Public Health Law § 2850 *et seq.)* from the State Medical Care Facilities Finance Agency (hereinafter MCFFA) for the construction of a nursing home in New York City. In 1974, petitioner and MCFFA entered into a loan agreement for such financing in the sum of $8,145,000, which was approved by respondent Commissioner of Health *(see,* Public Health Law § 2858 [1]). As part of its mortgage application, petitioner submitted a "schedule A" setting forth the estimated costs and capital requirements for the construction project. Such "project costs" are defined under the statute and require the Commissioner's approval as "reasonable and necessary" (Public Health Law § 2852 [4]). Among the items included in the definition are working capital not to exceed the larger of 3% of estimated total cost or 3% of actual total cost, fixtures, equipment and items of personal property required for the operation of a residential facility, and initial occupancy expenses *(see,* Public Health Law § 2852 [4]). Petitioner's schedule A listed aggregate project costs of $10,492,536. Petitioner's letter of transmittal of its schedule A advised that no amount was listed for initial occupancy expenses because this item was to be handled through the creation of an escrow account by the Home For Old Men and Aging Couples (hereinafter HOMAC), petitioner's sponsoring organization. HOMAC also undertook to make up the balance between the amount of the mortgage and the aggregate construction costs.

Petitioner's nursing home was completed and opened for patients in November 1976. The instant dispute arises out of

the Commissioner's calculation of petitioner's reimbursement rates for care of patients for the years 1983 and 1984. The Public Health Law requires the Commissioner to promulgate regulations governing the portion of reimbursement rates which permit a facility such as petitioner's to recoup "real property costs" (see, Public Health Law § 2808 [1] [b]; [2-a]). The regulations adopted by the Commissioner implement this by authorizing depreciation "based on approved historical cost of buildings, fixed equipment and capital improvements" (10 NYCRR 86-2.19 [a]).* In the case of a residential facility which had financed construction, as did petitioner, through a mortgage loan under Public Health Law article 28-A, the depreciation regulation specifies that its provisions nevertheless apply, but that, as to "the loan-financed portion" of facility costs, the Commissioner "shall allow level debt service on the mortgage loan" (10 NYCRR 86-2.19 [d]).

In determining petitioner's 1983 and 1984 rates, the Commissioner disallowed any reimbursement for the nonmortgage portion of facility costs. The Commissioner thus rejected petitioner's claim for a reimbursement rate based upon its actual historical cost of construction, aggregating over $14 million.

After exhausting its administrative appeals, petitioner brought this CPLR article 78 proceeding seeking judicial review of the determinations. In 1986, while this proceeding was pending before Supreme Court, respondents completed an audit of petitioner's approved project costs. At the same time they announced a new policy regarding facilities constructed through MCFFA financing. Respondents declared that reimbursement for nonmortgage capital costs would be allowed, but would be limited to the aggregate project costs initially approved by the Commissioner on the loan application. Respondents then consented to the relief sought in the petition, but only to the extent of permitting recovery of the audited approved project costs as set forth in petitioner's schedule A, i.e., the sum of slightly more than $11 million. Disallowed were petitioner's claims for reimbursement of initial occupancy expenses, a portion of working capital and certain equipment, all because they were not included in the items and amounts set forth in schedule A.

Supreme Court granted annulment of the determinations except as to matters raised in the petition that were unrelated

* The regulation in effect at the time petitioner's loan was entered into and construction commenced omitted the word "approve".

to the disallowance of depreciation based upon costs in excess of the schedule A approved project costs. Supreme Court held that the Commissioner could not validly adopt and enforce a fixed policy of placing such a ceiling on reimbursement of real property costs of a nursing home facility without duly adopting a formal regulation to that effect. Remittal was directed for a redetermination. This appeal by respondents ensued.

■■ There should be an affirmance. We reject at the outset respondents' claim that petitioner is actually seeking judicial review of the determinations based on the 1986 audit allowing reimbursement of depreciation of some $11 million in construction costs from which no administrative appeal was taken, and, hence, that there was a failure to exhaust administrative remedies. First, if petitioner is correct in its position that the Commissioner acted arbitrarily in disallowing all historical costs solely because they were not set forth in its estimated costs approved by the Commissioner in connection with petitioner's loan application, it was entitled to relief from the more restrictive 1983 and 1984 rate determinations. In any event, in view of the fixed policy announced by the Commissioner putting this ceiling on reimbursement for depreciation, a classic case is presented of where a legal challenge is permitted because administrative review would be "futile" (see, Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57).

■ Turning to the merits, we agree with Supreme Court's conclusion that the Commissioner could not adopt a fixed general principle of capping allowable depreciation costs, as was done here, to be applied without regard to other facts and circumstances relevant to the regulatory scheme he administers, without first promulgating that policy as a rule or regulation as required by NY Constitution, article IV, § 8 (see, Matter of Roman Catholic Diocese v New York State Dept. of Health, 66 NY2d 948, 951). Under the basic statutory scheme, reimbursement rates are set prospectively to be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities * * * [taking] into consideration the elements of cost" (Public Health Law § 2807 [3]). As to real property costs such as are in issue here, the Commissioner is directed to promulgate regulations for computing reimbursement "upon a cost valuation basis of the facility as determined by the commissioner" for facilities granted operating certificates before March 10, 1975 (Public Health Law § 2808 [2-a] [c]), and for later facilities, "based

upon historical costs", limited to "actual debt service * * * and payment with respect to owner's equity" (Public Health Law § 2808 [2-a] [d]). The existing regulations on reimbursement rates for nursing home facilities conform to the statutory approach, limiting reimbursement of costs in general to those determined by the Commissioner to be reasonably necessary for an efficiently operated facility *(see,* 10 NYCRR 86-2.17 [d]).

As already noted, the Commissioner's approval of project costs is also required pursuant to the provisions of Public Health Law article 28-A, which separately define such costs for purposes of financing construction through MCFFA (Public Health Law § 2852 [4]). MCFFA may not make a mortgage loan to a nonprofit nursing home company such as petitioner in excess of the total project costs as approved by the Commissioner (Public Health Law § 2858 [2]). The regulations adopted to implement Public Health Law article 28-A provide for the submission of a schedule of estimated development costs and capital requirements for approval by the Commissioner (10 NYCRR 87.3 [f]). Presumably, petitioner's schedule A was submitted in compliance with that requirement. The Public Health Law article 28-A regulations also require prior approval of the Department of Health of any payments during construction *(see,* 10 NYCRR 87.4). The uncontested facts establish that petitioner complied with this requirement and that the Department of Health approved its project cost disbursements, including those paid out of the escrow fund set up by HOMAC for, *inter alia,* initial occupancy expenses, an item included within the definition of permissible project costs under Public Health Law § 2852 (4).

Respondents have not pointed to any provision of either the statute or the regulations which would have put petitioner on notice when it submitted schedule A in 1973 that the Commissioner's approval of the estimated project costs, contained in schedule A for purposes of obtaining financing from MCFFA, would constitute a ceiling on recovery of its actual historical costs through depreciation allowed for reimbursement rate purposes. In other words, the regulations do not explicitly relate approved project costs for financing purposes under Public Health Law article 28-A to rate reimbursement of the real property cost element of nursing home costs under Public Health Law article 28. Clearly, the statutory provisions create no such explicit relationship since approved estimated project costs under Public Health Law article 28-A only serve the

purpose of putting a ceiling on the amount of the mortgage loan *(see,* Public Health Law § 2858 [2]). Without some express reference in the statute or regulations, petitioner could not have been expected to know that its omission of certain allowable project costs from a schedule submitted for mortgage loan approval purposes (when it was not seeking a mortgage for the full amount of its project costs) would later preclude it from demonstrating that the omitted costs were reasonable and necessary under the general standards for rate reimbursement.

Respondents allude to several provisions in the regulations they claim would have put petitioner on notice and afford the Commissioner the authority to impose the ceiling based upon approved project costs, namely, that depreciation is to be based upon *"approved* historical cost of buildings [and] fixed equipment" (10 NYCRR 86-2.19 [a]; emphasis supplied), and that capital cost reimbursement is to be based upon "[i]nitial allowed facility cost" (10 NYCRR 86-2.21 [a] [6]; [b], [e] [3] [ii]). As to the first of the referenced regulatory provisions, the word "approved" was added to the regulation well after petitioner submitted schedule A. Even if applicable, the addition of "approved" to the mandate to base depreciation on historical costs is most reasonably interpreted to refer to the statutory duty of the Commissioner to undertake cost valuation as to reasonableness and necessity *(see,* Public Health Law § 2808). In the absence of any express cross reference, the addition of "approved" in a reimbursement rate regulation hardly suggests that it was meant to apply to the Commissioner's approval of estimated project costs under a separate article of the Public Health Law dealing with nursing home construction financing *(see,* Public Health Law art 28-A). The alternative regulatory sections relied upon are met with the very same objections. Aside from the fact that they are contained in a regulation captioned "[c]apital cost reimbursement for *proprietary* residential health care facilities" (10 NYCRR 86-2.21 [emphasis supplied]), the use of the facility's "initial allowed facility cost" (again without explicit cross reference to approved project costs for mortgage loan purposes under Public Health Law § 2852 [4], and its implementing regulations) is most reasonably interpreted to apply to preaudit allowance of reimbursable capital costs by the Commissioner, as reasonable and necessary, or perhaps to apply to the initial construction project approval process *(see,* Public Health Law § 2802; 10 NYCRR part 710), which clearly were

not the basis upon which the Commissioner imposed the ceiling herein.

Accordingly, Supreme Court correctly held that respondents' policy of limiting reimbursable real property costs of MCFFA-financed nursing home facilities to the approved project costs for mortgage loan purposes under Public Health Law article 28-A, without reference to other factors bearing on the reasonableness and necessity of such costs, could not be enforced in the absence of a duly promulgated rule or regulation to that effect *(see,* NY Const, art IV, § 8; *Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, *supra).* Therefore, Supreme Court's annulment of the determination and remittal to the Commissioner for a recomputation of reimbursement rates under the appropriate existing statutory and regulatory standards should be affirmed in all respects.

MAHONEY, P. J., WEISS, HARVEY and MERCURE, JJ., concur.

Judgment affirmed, with costs.