OPINION OF THE COURT
Emily Jane Goodman, J.
This case involves the entitlement to education versus the access to public benefits or welfare.
Plaintiffs in this proposed class action lawsuit are all 19-year-old New York City high school students whose families rely on the Safety Net Public Assistance Program (SNA) to meet their basic needs. Each plaintiff has been told by defendants, the City and State agencies charged with implementing SNA, that they must participate in the Work Experience Program (WEP), commonly known as Workfare, or they (and perhaps their families) will cease receiving benefits. Each plaintiff claims that the WEP assignments interfere with her high school studies in violation of the New York State Constitution and State law.
BACKGROUND
Plaintiff Yasmin Matthews, a senior at Brooklyn Comprehensive Night High School, turned 19 on October 17, 1997.
The Matthews complaint alleges as follows: plaintiff lives with her grandmother, mother and brother in Brooklyn, New York. Her grandmother receives a pension. The only income that she, her mother and brother receive is a Safety Net Assistance grant of $259 semimonthly plus food stamps of about $260 a month. Her mother suffers from a seizure disorder which makes it impossible for her to work outside the home. She and her brother are students.
Ms. Matthews attends classes from 3:00 p.m. until 9:00 p.m. Monday through Thursday. Prior to starting at Brooklyn Comprehensive in September of this year, she attended A. Phillip Randolph High School in Manhattan.
Most of the classes she has to pass in order to graduate are math or math related. This semester she has three math classes and physics plus literature and drama. She requires at least three hours per day to study.
*604 On approximately November 6, 1997, she went to the Office of Employment Services (OES) on East 16th Street in Manhattan in response to a “call-in letter”. She was told that she was required to work 23 hours every two weeks in the City’s Work Experience Program in exchange for her portion of her family’s welfare benefits. Plaintiff informed the interviewer that (a) she was attending high school and that (b) she has asthma and cannot work around fumes and dust. Plaintiff was instructed to tell that to her WEP supervisor.
The OES worker then gave Ms. Matthews a letter referring her to the Department of Citywide Administrative Services at 26 Washington Street for orientation and to get her specific work assignment. On November 17, 1997 she appeared and was told to report to the Criminal Court building at 120 Schermerhorn Street in Brooklyn to begin working on November 19 at 9:00 a.m.
On November 19, plaintiff was late reporting to her assignment because she had to wait on a long line to go through the courthouse magnetometers. When she finally got through, she was told that it was too late for her to start on that day and that she should return the next day.
The next day she reported to her assignment and was told that her hours would be from 7:00 a.m. to 2:00 p.m. Monday through Wednesday and from 7:00 a.m. to 1:00 p.m. on alternate Thursdays. When she informed the supervisor that she has asthma and cannot work around dust, she was told that it did not matter and she was assigned to do mopping, sweeping and picking up garbage, which she did until 2:00 p.m. As a result, plaintiff was late for school that day.
The following day, November 21, plaintiff was told to report back to 26 Washington Street to view, ironically, a “Right to Know” video about workplace hazards. While she was there, she again complained that she could not do the kind of work she had been assigned to because of her asthma. This time, she was told that she was being reassigned. Her new assignment would be at 26 Washington Street and would begin on December 1. She had been told that her hours for this assignment would be from 8:00 a.m. to 1:00 p.m. Monday through Wednesday and from 8:00 a.m. to 12:00 noon on alternate Thursdays. Also, she was being assigned to work in two different boroughs, at locations distant from her school.
Plaintiff’s classes end at 9:00 p.m. and it takes her about IV2 hours to get home, via two buses. She usually goes right to bed when she gets home. Until she started going to her WEP as *605 signment, her pattern was to get up at 8:00 a.m. and do homework from 9:00 a.m. until noon. She would then leave for school at about 1:00 p.m.
With her WEP assignment, the complaint alleges that plaintiff would have to leave her home before 7:00 a.m. and would barely have enough time after her WEP assignment ends to have lunch and get to school by the start of classes. If she stays up after school to do her homework she will have to try to get by on less than five hours per day of sleep, which is dangerous to her health, and would not allow her to function properly during the day. In the few days she has tried to comply with her OES obligations in the morning and then go to school, she has experienced fatigue. In addition, she is having difficulty in one of her math classes and needs tutoring, which she only can get before school. She is also scheduled to start a preschool writing workshop which would meet before school. If she has to do a WEP assignment until 1:00 p.m. she will not be able to get the tutoring she needs or to participate in the workshop.
However, if plaintiff does not do her WEP assignment, her family will lose her portion of their welfare grant, which would mean a reduction from $518 per month to $421. With $97 less per month to live on, the family will not be able to afford basic necessities. The share of the rent paid by her mother, brother and herself is $312. They spend another $100 to $150 in cash on food beyond what they are able to purchase with their food stamps. The remainder of their income is spent on clothes, transportation, phone service, toiletries, and paper goods. If their cash assistance were cut to $421, they would have only enough to cover their share of the rent and food. As they would still need to spend money on other necessities, they would have to cut back on food or not pay their share of the rent.
Plaintiff Benita Frazier is a senior at the High School of Redirection in Brooklyn and also attends a class at Maxwell High School in Brooklyn. She lives with her mother and grandmother in Brooklyn, New York. Her grandmother receives $613 in Social Security. She and her mother both receive Safety Net Assistance benefits. The New York City Department of Social Services (City DSS) sends their landlord $250 for their share of their rent. (Their full rent is $294. Her grandmother pays the rest of that amount.) She and her mother each receive $54.50 semimonthly in cash assistance. Together, they receive $161 in food stamps.
The Frazier complaint alleges that Ms. Frazier’s mother used to work, but left work to help care for plaintiffs grandmother *606 who is ill with diabetes and high blood pressure. Although her grandmother has a home attendant for part of the day, the home attendant is not permitted by law to administer medicine, so plaintiffs mother has to be there to do it.
Ms. Frazier is in classes at High School of Redirection from 8:45 a.m. until 1:00 p.m. Monday through Friday. She is taking seven courses: math, science, social studies, English literature, writing, family group, and Spanish. She is also taking a vocational course at Maxwell High School from 2:10 pjvt. until 4:10 p.m. It takes her about 45 minutes to get from one school to the other. Prior to starting at High School of Redirection in the summer of 1996, she was a student at Franklin K. Lane High School.
The Frazier complaint further alleges that Ms. Frazier’s homework load varies from two hours some days to as many as five hours on others. On average, she has about three hours of homework each day. On approximately November 5, 1997, Ms. Frazier went to the Office of Employment Services on East 16th Street in response to a call-in letter. She met with a clerk who told her that she had to work 28 hours every two weeks in the City’s Work Experience Program in exchange for her welfare benefits. Plaintiff informed the worker that she was still in high school, but was given an assignment beginning at 9:00 a.m., which directly conflicted with her school hours. She also was instructed to return to the same office the next day.
On the next day, the clerk plaintiff had met with was not there. A second clerk changed plaintiffs assignment so that she was now required to report at 5:00 p.m. on November 19 to the Supreme Court building in Brooklyn.
The complaint further alleges that on November 19, plaintiff went to the Supreme Court building. Her supervisor told her that she would have to work seven hours per night from 5:00 p.m. until midnight, two nights per week, emptying wastepaper baskets and dusting the courtrooms. Ms. Frazier has to take the subway home to East New York, in Brooklyn, after she is finished working at midnight, which she is frightened to do.
The complaint further alleges that Ms. Frazier cannot comply with the WEP assignment without failing in school. On the days when she has her WEP assignment, she has no time to do homework until she gets home at 1:00 a.m. Although she has tried to do some homework at that time, she is too tired and has to go to bed. She is, therefore, always handing in her assignments late. The next morning she has to get up to go to school around 7:00 a.m. and is then very tired all that day.
*607 Ms. Frazier’s complaint further alleges that, if she does not do her WEP assignment, her public assistance case will be closed. She will lose the $54.50 that she is receiving semimonthly and City DSS will send their landlord $215 rather than $250 per month. If this happens, it will make it impossible for her family to pay for all of their necessities, such as clothing, food and transportation.
Plaintiff Jennifer Steimel is a senior at Curtis High School in Staten Island. She lives with her widowed grandmother in Staten Island, New York. She receives Safety Net Assistance in the amount of $450 per month. It comes in two semimonthly payments, one of $200 and one of $250; she also receives some parental support paid directly to the New York City Department of Social Services.
The Steimel complaint alleges that her grandmother works at Stroheim and Roman, a textile firm in Queens, leaving home at 5:00 a.m. and returning 7:00 p.m. Monday through Friday for her 7:00 a.m. to 5:00 p.m. job. Ms. Steimel leaves for school at about 7:30 a.m. in order to spend an hour studying before her classes start at 9:06 a.m. (Her trip to school takes between half an hour and 40 minutes.) Plaintiffs classes end at 2:30 p.m., but three days a week she has an extra period of tutoring from 2:45 p.m. to 3:30 p.m. She is taking economics, earth science, geometry, parenting and choir, plus tutoring in earth science and geometry.
The Steimel complaint further alleges that on the days when Ms. Steimel has tutoring she gets home between 4:00 and 4:30 p.m., and then she must walk the dog, do her homework, cook dinner for herself and her grandmother, take a shower and get ready for bed. Her homework takes about IV2 hours per night.
Plaintiff was recertified as eligible for public assistance on November 15, 1997. The complaint alleges that when plaintiff told the worker she was in high school, the worker said she might be exempt from WEP based on her school attendance. Shortly thereafter, plaintiff was summoned to the Office of Employment Services on 16th Street in Manhattan for an early morning appointment. She appeared and brought a letter from her guidance counselor stating that she was enrolled in Curtis High School and that her schedule was full. When she showed the letter to an OES employee, he said she would have to work in WEP even though she was in high school. He gave her a computer-generated notice saying that she was required to report to 26 Washington Street in Manhattan at 9:00 a.m. on December 1, 1997. He also told her to bring an updated letter *608 from her guidance counselor to the appointment at 26 Washington Street.
Ms. Steimel missed school on December 1 in order to keep the appointment at 26 Washington Street, and she brought an updated letter from her guidance counselor verifying that she was in high school. She was informed that she would still have to work, was told to fill out a personal history form for Workfare, and was informed that if she did not perform a WEP assignment, her public assistance benefits would be terminated. She was interviewed for about 10 minutes before being sent home and was told to come back the next day to see a video. She was assigned to start work on Wednesday, December 3, at 9:00 a.m. at Borough Hall on Richmond Terrace in Staten Island, sweeping and mopping and doing other maintenance work.
The complaint further alleges that, as plaintiff could not afford to miss any more school, she did not return on December 2 to see the video, and did not report to work on December 3. The complaint alleges that plaintiff and her grandmother will suffer deprivation and hardship if her public assistance benefits are terminated. Her grandmother relies on the shelter allowance to help pay the mortgage and on her heating allowance to help pay the high heating bills. Without her contribution, her grandmother is in danger of falling behind in her payments and losing the house and their shelter.
Plaintiff Franciny Reyes is a senior at Westside High School in Manhattan. She lives with her mother and older sister at 515 West 139th Street in New York, New York. The mother, being disabled, receives Supplemental Security Income of $507 per month. Her sister works and takes home between $300 and $350 every two weeks. Franciny receives Safety Net Assistance of $149 semimonthly from the New York City Department of Social Services. Her family does not receive food stamps.
The Reyes complaint alleges that plaintiff has classes from 8:00 a.m. until 2:45 p.m. Monday through Thursday and from 9:00 a.m. until 12:20 p.m. on Fridays. She is taking eight courses: math, two social studies classes, two English classes, American history, art and an independent study. She spends about one hour to IV2 hours six days a week on her independent study course. Starting in February, she would also have to attend night school two evenings per week from 6:00 p.m. until 8:00 p.m. Prior to starting at Westside in 1995, she was an “A” student at A. Phillip Randolph High School.
*609 The complaint further alleges that, in addition to her independent study, plaintiff spends about 2Vz hours per night on homework from Monday through Friday. On or about November 16, 1997, plaintiff went to the Office of Employment Services on 16th Street in Manhattan in response to a call-in letter. She met with a clerk who told her that she had to work 32 hours every two weeks in the City’s Work Experience Program in exchange for her welfare benefits. She said she was still in high school, but nevertheless was told to report to the Department of Citywide Administration Services at 9:00 a.m. on December 1 for orientation for her assignment.
On December 1st, Ms. Reyes missed school to go to orientation at 26 Washington Street. She was told that she would have to report back to that address the next morning for “Right to Know” training and that she would then begin her WEP assignment on December 3 at 9:00 a.m. at 253 Broadway in Manhattan.
The Reyes complaint further alleges that because plaintiff did not want to miss any more school, she did not go back to 26 Washington Street on December 2 and did not go to 253 Broadway on December 3. The complaint alleges that if plaintiff and her family lose the $298 per month that she is receiving, they will not be able to pay for their necessaries, not even food.
APPLICABLE LAW
Social Services Law § 336-a (4) (b) requires as follows for any 18- or 19-year-old participant in a work activity that is required for public assistance eligibility: “(b) Any such participant who is age eighteen or nineteen shall be assigned to educational activities, except that the district shall assign such participant to employment and/or other activities under this title if the district has determined that such alternative activities are consistent with the participant’s employability plan and, pursuant to department regulations, there has been a determination by the district based on such plan that educational activities are not appropriate for such participant or that the participant has failed to make good progress in such educational activities.” Thus, the WEP assignments for the plaintiffs in this case must be “consistent” with the plaintiffs’ employability plan, and there must have been a “determination * * * that educational activities are not appropriate for such participant or that the participant has failed to make good progress in such educational activities.” (Social Services Law § 336-a [4] [b].)
*610 Social Services Law § 336-a (4) (d) requires as follows: “(d) The social services official shall not assign a participant described in this subdivision to any activities which interfere with the educational activities assigned pursuant to such participant’s employability plan and described in this subdivision.”
Thus the activities assigned to each plaintiff in this case must not interfere with their “educational activities”.
The implementing regulation, 12 NYCRR 1300.9 (c) (5), provides as follows: “An individual who is assigned to educational activities consistent with the employment goals identified in the employability plan * * * shall not be assigned to any other activity that might interfere with attendance at class” (emphasis added).
Thus the regulation narrows the statutory requirement that work assignments shall not interfere with “educational activities” to a requirement that assignments not interfere with “attendance at class”.
Social Services Law § 336-a (5) requires as follows: “5. Any applicant for or recipient of public assistance pursuing activities described in this subdivision shall not be assigned to any other activity prior to conducting an assessment and developing an employability plan as prescribed in section three hundred thirty-five or three hundred thirty-five-a of this title. Local social services districts may periodically reevaluate a participant’s employment plan and make assignments to other work activities in order to meet participation rates, giving due consideration to the participant’s progress in the current, and if applicable, prior program.”
Thus each of the plaintiffs, being in high school (an educational program described in Social Services Law § 336-a), “shall not be assigned to any other activity prior to conducting an assessment and developing an employability plan”. (Social Services Law § 336-a [5].)
In New York City, the public assistance employment program is administered through defendant Barrios-Paoli’s Office of Employment Services. It is OES’s practice to send notices to all Safety Net Assistance recipients not known to be exempt from employment program participation calling them in for interviews at its office. Unless a Safety Net Assistance recipient is determined exempt at the call-in interview, he or she is assigned to work in the Work Experience Program as his or her mandatory employment program activity. Typically, WEP as *611 signments involve performing maintenance work in a City agency, such as the Parks, Sanitation or General Services.
Although the State law authorizes the City to require 19 year olds who attend school to participate in up to 40 hours of assigned work (including work and educational activities), the City limits the requirement to 35 hours of assigned activities per week. However, the law does not count homework toward the 35 hours.
Article XI, § 1 of the New York State Constitution provides: “The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated.”
DISCUSSION
The New York State Constitution establishes the right to public education. Yet the City and State both are engaged in practices that set up unconscionable obstacles for these young people who are completing high school, who have turned 19, and whose families rely on public assistance to meet their basic needs by not giving them time to do homework; requiring them to travel late at night on subways to empty trash baskets in deserted municipal buildings; assigning them work that bears no relation to their education or educational goals; and by failing to develop an employability plan with them prior to assigning them work.
It is quite surprising, in light of defendant City’s commitment to education, that defendants refuse to allow sufficient time at reasonable hours for plaintiffs to do their homework, and that plaintiffs are in effect being required to drop out of high school in favor of welfare. Social Services Law § 336 (4) provides that no participant shall be required to participate in assigned activities for more than 40 hours per week. Under section 336-a (4) (b), these students are assigned to pursue and complete their high school education. Homework is an essential component of attending and completing high school, as are independent studies and tutoring (which some of the plaintiffs are engaged in). Similarly, there is no consideration of, let alone encouragement for, other extracurricular activities that should be part of the high school experience, such as student government, sports, community service, activities that enhance a young person’s chance to get into college and/or the workforce, develop social skills, and self-esteem and to become productive, contributing members of society. Indeed, defendants’ insistence on their right to disclaim any responsibility *612 for allowances for homework strikes this court as punitive, cynical and counterproductive. (Perhaps this litigation has inadvertently pointed out a major flaw in our public education system, i.e., “homework is not necessary”.)
A recent report by the New York City Comptroller’s Office documents how important it is to their future economic well-being for these students to stay in school and get their diplomas. According to that report, 62.8% of City residents who are high school graduates are employed as compared to only 44.6% of high school dropouts. The average monthly income for high school graduates is $1,380, while the average monthly income for dropouts is $906. Obviously, it is in the best interests of plaintiffs, the defendants, and all New York City residents that these plaintiffs are supported and encouraged to finish school.
Additionally, plaintiffs allege that not one of them has been assigned to work pursuant to an “employability plan”; a reflection of the defendants’ failure to provide assistance to these struggling young people to plan, nurture, provide for their future. Defendants have moved for summary judgment, but have not demonstrated that any such plans were developed for any of the plaintiffs. Instead, defendants take the position that a “personnel questionnaire” filled out by each plaintiff, with information about the recipient’s education, training, employment and special skills, satisfies the statutory requirement. (Affidavit of Rose Manchel, Assistant Deputy Commr of Safety Net Program, sworn to Feb. 24, 1998.) There is a blank sample questionnaire attached to Ms. Manchel’s affidavit, but no questionnaires filled out by or about any of the plaintiffs.
The City’s position is that a prework assignment assessment/ employability plan is required only if the City concludes that a 19 year old who is attending high school should not be permitted to continue in school. The State’s implementing regulations, 12 NYCRR 1300.7 (a) (5), permit a WEP assignment prior to completion of an assessment, and permit up to a year to complete the assessment. The City applies this regulation to 19 year olds who have only one year, or one term or even less remaining to complete high school which is clearly in the public interest as well as plaintiffs’.
The court finds the regulations woefully deficient in encouraging young people to finish high school and in supporting their endeavors to do so, in violation of the statute and the State Constitution. The regulations, and their implementation in the cases of these plaintiffs, also clearly violate the statute.
*613 Social Services Law § 335 (2) (a) provides guidance for development of the employability plans: “To the extent possible, the employability plan shall reflect the preferences of the participant in a manner that is consistent with the results of the participant’s assessment and the need of the social services district to meet federal and state work activity participation requirements, and, if such preferences cannot be accommodated, the reasons shall be specified in the employability plan. The employability plan shall also take into account the participant’s supportive services needs, available program resources, local employment opportunities, and where the social services official is considering an educational activity Assignment for such participant, the participant’s liability for student loans, grants and scholarship awards. The employability plan shall be explained to the participant. Any change to the participant’s employability plan required by the social services official shall be discussed with the participant and shall be documented in writing.”
Instead of making use of this statutory mandate in a way that will teach, mentor and assist these young people — a statutory mandate that includes requiring their participation in the development of an employment plan, requires the use of support services assistance with educational scholarships and loans — the defendants failed to create any plan and claim the right to not develop a plan for a year by which time it might be moot, but has more to do with emptying trash cans than furthering the learning experience. This might be an apt use of the current technological expression, “garbage in, garbage out”.
INJUNCTIVE RELIEF
The court finds that plaintiffs have met the criteria for a preliminary injunction: it is likely that it will be shown that the work assignments “interfere” with the plaintiffs’ educational activities in violation of the statute. Insofar as the State’s regulations narrow “educational activities” to classroom attendance, and eliminate homework, this court finds it likely that those regulations will be found to be unduly restrictive. At oral argument the attorney for the City (a former teacher himself) conceded that one teacher may assign one hour of homework while another may assign five; any parent, student or teacher knows this. Yet the defendants defend their callous position that the five-hour differential between the statutory hours allowed for assigned activities is an implicit five-hour homework time, and a sufficient one in all cases.
*614 Plaintiffs also have shown irreparable harm. Their very survival incomes and often those of their entire families will be impacted if they fail to show up for work, or they may fail school if they choose the work assignment over school. The balance of the equities obviously favors plaintiffs; in fact, the defendants will benefit greatly from facilitating the completion of plaintiffs’ education. Thus, the motion for a preliminary injunction is granted.
The court also notes that plaintiffs’ failure to challenge their assignments at fair hearings does not bar the claims and request for relief in this court. The administrative exhaustion rule need not be followed when that agency’s action is challenged as unconstitutional or resort to the administrative remedy would be futile. (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57.) Both factors are present here; as discussed above there is merit to the constitutional challenge, and the agency regulations are violative of the statute.
CLASS CERTIFICATION
The motion for class certification also is granted. There are potentially hundreds of class members; questions of law and fact are common; the claims of the named plaintiffs are typical of the class and they will adequately represent the class. Thus the requirements of CPLR 901 are met.
The motions to intervene are granted, without opposition; however, the certification of the class appears to moot the intervention issue. Preliminary injunction granted and cross motion for summary judgment denied.