OPINION OF THE COURT
 

 Fuchsberg, J.
 

 This case involves a challenge to the power of the Buffalo Sewer Authority to levy "sewer rents” computed on the basis of the assessed valuation of the appellant’s property in the face of a tax limitation agreement between the appellant and the City of Buffalo.
 

 The plaintiff-appellant, Watergate II Apartments, is a designated "redevelopment company” organized under article 5 of the New York Private Housing Finance Law. To satisfy eligibility requirements for a Federal national mortgage construe
 
 *56
 
 tion loan, it entered into a tax abatement agreement with the City of Buffalo under which it was exempt from "taxes * * * in excess of $35,200 per year”.
 

 After Watergate completed construction of the apartments so financed, the defendant-respondent Buffalo Sewer Authority billed it for (1) "sewer rents” based on the assessed value of its taxable property, (2) "sewer charges” based on the actual consumption of water at the Watergate II Apartments, and (3) "sewer rents” based on the assessed value of its tax exempt property. In doing so, the authority acted pursuant to section 1180 of the Public Authorities Law, which empowers it to "establish a schedule of * * * sewer rents [which] may be based upon either the consumption of water on premises connected with such facilities * * * the number and kind of plumbing fixtures connected with such facilities, or the number of persons served by such facilities, or may be determined by the authority on
 
 any other equitable basis”
 
 (emphasis ours).
 

 Watergate paid the first two items, but refused to pay the third. It then commenced this action against the authority to obtain a declaration that the rejected charges were "unlawful and unconstitutional” as applied, essentially because, though denominated sewer rents, they "[bore] no relationship to the quantity of water used or the amount of flow therefrom” and therefore constituted a discriminatory tax beyond the power of the authority to impose. Watergate moved for summary judgment; the authority cross-moved pursuant to CPLR 3211 to dismiss the complaint.
 

 Special Term, granting Watergate’s motion and denying that of the authority, declared the sewer rents in question "null and void” and entered an order to that effect. The court agreed with Watergate that, because the sewer rents were computed on the basis of assessed valuation, they were taxes, which the authority did not have the power to levy. It also rejected the authority’s contention that Watergate had failed to exhaust its administrative remedies. Finally, it found, it unnecessary to reach the question, raised by the parties, of the effect of the tax abatement agreement with the city.
 

 The Appellate Division, in reversing, expressed the opinion that the sewer rents were not violative of Watergate’s agreement with the city, but, without going on to determine the propriety of using assessed value as a factor in fixing water charges, held that, in any event, Watergate was not
 
 *57
 
 entitled to judicial relief until it had exhausted its administrative remedies. We now uphold its order, but we do so on the ground that the authority did not overstep its statutory bounds merely by basing sewer rents on assessed valuation.
 
 *
 

 It is hornbook law that one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law (e.g.,
 
 Young Men’s Christian Assn. v Rochester Pure Waters Dist.,
 
 37 NY2d 371, 375). This doctrine furthers the salutory goals of relieving the courts of the burden of deciding questions entrusted to an agency (see 1 NY Jur, Administrative Law, § 5, pp 303-304), preventing premature judicial interference with the administrators’ efforts to develop, even by some trial and error, a co-ordinated, consistent and legally enforceable scheme of regulation and affording the agency the opportunity, in advance of possible judicial review, to prepare a record reflective of its "expertise and judgment”
 
 (Matter of Fisher [Levine],
 
 36 NY26 146, 150; see, also, 24 Carmody-Wait 2d, NY Prac, § 145:346).
 

 The exhaustion rule, however, is not an inflexible one. It is subject to important qualifications. It need not be followed, for example, when an agency’s action is challenged as either unconstitutional or wholly beyond its grant of power (cf.
 
 Matter of First Nat. City Bank v City of New York,
 
 36 NY2d 87, 92-93; see Jaffe, Judicial Control of Administrative Action, p 438), or when resort to an administrative remedy would be futile
 
 (Usen v Sipprell,
 
 41 AD2d 251; 1 NY Jur, Administrative Law, § 171, p 575) or when its pursuit would cause irreparable injury
 
 (Pierne v Valentine,
 
 291 NY 333;
 
 Utah Fuel Co. v Coal Comm.,
 
 306 US 56).
 

 It is sufficient unto the purposes of the present case that it falls within the first of these exceptions. As is made clear by the
 
 First Nat. City Bank
 
 case
 
 (supra,
 
 p 92), even where a statute expressly designates an article 78 proceeding as the
 
 *58
 
 sole route to relief from its invalid application, resort to another form of judicial scrutiny nevertheless may be had when the statute "is alleged to be unconstitutional, by its terms or application, or where [it] is attacked as wholly inapplicable”. There is no reason why this principle should have less force where our jurisprudence requires that one challenging the enforcement of a statute first pursue administrative remedies.
 

 Watergate points to no violation of any State or Federal constitutional provision; to the contrary, section 1180 of the Public Authorities Law, under which the authority promulgated its schedule of water rent classifications, long ago was declared constitutional
 
 (Robertson v Zimmermann,
 
 268 NY 52). Rather, the complaint is that, in interpreting the "equitable basis” language of the statute as though it granted power to base water rents on assessed valuation, the authority has in fact imposed a tax.
 

 For the reasons we later indicate, the levying of a tax is dehors the authority’s jurisdiction. Unlike taxes, which go to the support of government without • any necessity to relate them to particular benefits received by the taxpayer (58 NY Jur [rev], Taxation, § 2), the charges that the authority was empowered to collect were in the nature of fees which had to bear a direct relationship to the cost of furnishing the water services
 
 (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn
 
 Harbor, 40 NY2d 158, 163;
 
 New York Univ. v American Book Co.,
 
 197 NY 294). Thus, if Watergate’s contention is correct, the manner in which the authority has chosen to apply the statute would be wholly beyond its power. We therefore address that issue, but without reaching the factual question of the accuracy of the actual computation of the exact charges imposed (see
 
 Berkshire Fine Spinning Assoc. v City of New York,
 
 5 NY2d 347, app dsmd 361 US 3; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.09c, pp 30-83).
 

 Turning then to the substance of the plaintiffs claims, we conclude, preliminarily, that the tax abatement agreement with the city did not apply to the authority’s sewer rents. The agreement limited Watergate’s liability with respect to taxes imposed "by or in behálf of any taxing jurisdiction as defined in Subdivision 1 (d) of Section 125 of the Private Housing Finance Law”. And that definition, by expressly listing "any municipal corporation or district corporation, including any school district or any special district, having the power to levy
 
 *59
 
 or collect taxes” (Private Housing Finance Law, § 125, subd 1, par [d]), as the entities which are taxing jurisdictions, in effect excluded public benefit corporations, such as the authority, from its reach. Furthermore, section 1178 of the Public Authorities Law, which delineates the defendant’s power, does not grant it the right to tax.
 

 Focusing now on the argument that the charges constitute an illegal arrogation of power, we observe that, consistently with the rule to which we have already alluded, the Public Authorities Law allows the defendant to fix charges only for such services as it actually provides its customers (Public Authorities Law, § 1178, subd 11). In doing so, however, we are mindful that subdivision 11 of section 1178 must be read not only in conjunction with the specific indices of section 1180 — i.e., water consumption, the fixtures employed and the number of persons served — but also against the possibility that other more sophisticated formulae might be adopted under section 1180’s general "equitable basis” provision.
 

 On review of the authority’s compliance with these standards, the test is whether its formulae reflect reasonable and nonarbitrary interpretations of the statute (see
 
 Matter of New Rochelle Water Co. v Public Serv. Comm. of State of N. Y.,
 
 31 NY2d 397, 408-409;
 
 Silkman v Board of Water Comrs. of City of Yonkers,
 
 152 NY 327, 331). Exact congruence between the cost of the services provided and the rates charged to particular customers is not required. Where only an approximation of cost or value is possible, discrepancies may have to be endured in the name of administrative flexibility so long as there exists some rational underpinning for the charges levied (see Lander, Public Utility Rate Design: The Cost of Service Method of Pricing, 19 St Louis U LJ 36, 41; cf.
 
 Matter of Rothko,
 
 43 NY2d 305 [allowing recovery of damages where exact quantum of harm is indeterminable]).
 

 Against these general considerations, attempts to match the authority’s costs with the services rendered may be viewed as falling into two broad categories. The first and most obvious relates to the providing of water for current and predictable use. The specifically described standards for pricing set forth in section 1180 of the Public Authorities Law are straightforward methods of apportioning charges for direct use of water. Their very simplicity renders them well-nigh impervious to
 
 *60
 
 attack and. it is not surprising that Watergate finds them acceptable.
 

 But, supplying an essential service to the people of Buffalo also entails responsibilities of a far more complex, and perhaps equally important, nature. For instance, the authority’s province encompasses construction and maintenance of effluent and storm sewer lines, sewage collection and treatment facilities, removal of industrial wastes to prevent pollution and seeing to the availability of water distribution networks for use in firefighting. It also must look beyond the business of meeting present usage and availability requirements; constant planning is needed to ensure that reserves for future development of the system keep pace with projected societal change and growth (see, generally, Bryant & Hermann, Elements of Utility Rate Determination, 314-315 [1st ed]).
 

 The cost of these activities is bound to bear only limited direct relationship to the volume of water utilized by particular consumer (see 11 McQuillin, Municipal Corporations, § 31.30a, p 232). This is especially true because the identities of potential consumers may not be ascertainable at the time such capital outlays are incurred and, indeed, may never be completely ascertainable in a totally mathematical sense. The authority’s function — to help fill over-all community needs relating to health and safety for the benefit of present and future inhabitants of the area it serves — may not admit of complete correlation between consumption and cost.
 

 Given these concerns, the Legislature’s addition of a flexible standard — "any other equitable basis” — constitutes a logical response to the necessity for accommodating them. And the disputed basis chosen by the authority as a criterion for apportioning sewer rents seems a reasonable exercise of its power. Indicative of the reliability of the method so adopted is its widespread use by water utilities in other jurisdictions (see 11 McQuillin, Municipal Corporations, § 31.30a, p 232; Nash, Public Utility Rate Structures, pp 129-130 [1st ed]).
 

 Nor is it inconsequential that assessed valuations, which might well be expected to increase in proportion to need for and use of such facilities as effluent and storm sewer lines, will more readily reflect expenditures for installations of that kind. Everyday experience teaches that highly valued central business districts or desirable residential properties might, because of the density of construction and the concomitant increased need for sanitation, require a disproportionate (to
 
 *61
 
 water consumption) outlay for sewer construction and maintenance as compared to that required for more moderately priced rural areas.
 

 An exclusively use-based rate, as urged by Watergate, may, therefore, be largely an oversimplistic, unreliable and inadequate measure of "services rendered”, while utilization of a combination of the assessed value of real estate and of the amount of water consumed, though seemingly less exact, may result in a far more accurate allocation of charges. All this militates in favor of upholding the authority’s sewer rent schedule.
 

 The authority, then, is no mere seller of a good the cost of which may be fairly allocated to each purchaser solely on the basis of the quantity consumed. The public benefit the authority provides to all within its assigned territory goes far beyond that measure. Many of its activities redound to the common benefit of all property. A rational basis thus underlies the use of assessed valuation in the calculation of sewer rents, especially, as in the case before us, when combined with bases that directly weigh actual use as well.
 

 Having concluded that the charges bear a direct relationship to the broader reality of the services and benefits actually rendered to property owners as a whole and thus may properly be regarded as rents rather than taxes, and having construed the agreement with the city as not applying to "water rents” as distinguished from taxes, there is no less reason to apply the charges to the exempt portion of the Watergate property than to that which was nonexempt.
 

 Accordingly, on Watergate’s appeal, the order of the Appellate Division should be affirmed, with costs. The authority’s cross appeal should be dismissed, without costs.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
 

 On plaintiff’s appeal: Order affirmed.
 

 On. defendant’s cross appeal: Appeal dismissed.
 

 *
 

 [1] Defendant authority attempted to cross-appeal "from that part of the memorandum decision of the Appellate Division — Fourth Judicial Department, which * * * did not decide whether the defendant’s method of computing sewer rent charges is legal under Section 1180 of the Public Authorities Law.” Although no appeal can be taken from a "decision”, were the authority otherwise entitled to invoke our review, we would treat this defect as a mere misdescription (Cohen and Karger, Powers of the New York Court of Appeals, § 27, p 113). However, since the authority is not a "person aggrieved” by the order of reversal in its favor, its appeal must be dismissed (see CPLR 5511; Cohen and Karger, Powers of the New York Court of Appeals, § 91, pp 394-395.