◼ In the Matter of GEORGE HANCHARD, Respondent, v FACILITIES DEVELOPMENT CORPORATION, Appellant. [615 NYS2d 780] —Peters, J. Appeal from a judgment of the Supreme Court (Spain, J.), entered August 13, 1993 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent terminating petitioner's employment.

Petitioner, a licensed architect, was employed by respondent as a Development Administrator from September 1982 until June 1991. Petitioner's job performance was satisfactory until 1987 when he received a performance evaluation rating of "needs improvement". Thereafter, petitioner received both informal and formal criticism from his supervisors. The record reflects that there were attempts at counseling, but these attempts were spurned by petitioner and deemed unproductive by his supervisor.

On June 13, 1991, a letter was sent to petitioner charging him with being "materially deficient in his work" and informing him that his employment was being terminated effective June 28, 1991. On June 14, 1991, at the close of business, petitioner was orally notified of the contents of such letter and was instructed that his services were not required between June 14, 1991 and June 28, 1991 and that he should schedule an appointment to retrieve his personal belongings. Petitioner then commenced this CPLR article 78 proceeding to set aside respondent's determination to terminate his employment. Respondent raised several affirmative defenses and objections in point of law, specifically addressing petitioner's failure to exhaust his administrative remedies before seeking judicial review. Supreme Court granted petitioner's application and ordered that petitioner be reinstated.

While it is clear that petitioner must first exhaust all administrative remedies before seeking judicial review (see, Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57; Matter of Ward v Chesworth, 125 AD2d 912, lv denied 69 NY2d 610), a party need not exhaust such administrative remedies if such action would be futile (see, Watergate II Apts. v Buffalo Sewer Auth., supra; Matter of Herberg v Perales, 180 AD2d 166). Our review of the record reveals that such action would not have been futile in this case.

The June 13, 1991 letter adequately notified petitioner that he was "being charged with being materially deficient" as a

result of "recurring performance problems". The letter thereafter listed the areas in which petitioner was charged with being materially deficient. While the letter further informed petitioner that his projects were being reassigned and that respondent did not have need for his services during his final two weeks, we find that the letter clearly refers to "charges". The various policies regarding performance review from as far back as 1987, as modified by the Employee Handbook of July 1988, including the Part II Progressive Disciplinary Procedures issued in July 1989, reveal a method of review which we find was substantially followed in the instant case.

From as early as September 18, 1989, respondent made several attempts through petitioner's supervisors to discuss and review performance evaluations with petitioner. The record reveals that petitioner refused to discuss such evaluations and proposed methods of improvement in any reasonable or productive manner. The record further substantiates respondent's efforts between December 1990 and June 1991 where petitioner's supervisor notified him on numerous occasions, both in person and by letter, that his work performance was unsatisfactory. Petitioner steadfastly refused to appropriately respond to such comments. In January 1991 and again in May 1991, the record reveals various memoranda from petitioner's supervisor to the directors of Design and Construction, the Deputy Executive Director, the Human Resources Manager and the Affirmative Action Officer indicating the problems being encountered with petitioner and his failure to engage in any constructive performance evaluations.

In April 1991, a six-month evaluation of petitioner was completed which was subsequently reviewed by the Human Resources Manager and the Affirmative Action Officer. Petitioner's supervisor approached him on at least three occasions to discuss such evaluation. Again, a pattern of abusive interchanges occurred between petitioner and respondent's staff. Petitioner refused to meet to discuss the performance evaluation and refused to even accept a copy of such evaluation. As a result of what we find to be clear attempts at compliance with the disciplinary procedures detailed in each of the aforementioned Employee Handbooks, most significantly the guidelines issued in 1988, we find that the supervisor correctly furnished and distributed a list of concerns regarding petitioner's conduct warranting disciplinary action. We further find that the Human Resources Manager reviewed and investigated such charges, that such charges were reviewed by respondent's counsel and that upon completion of the investi-

gation, the Executive Director accepted the charge with the proposed penalty. We find that the Human Resources Manager thereafter appropriately sent the subject letter to petitioner.

Pursuant to the Employee Handbook, "the employee has not more than five (5) working days to respond to the charge and to the proposed discipline or penalty to accept it or to request a hearing". We find that the letter of June 13, 1991 clearly notified petitioner that he was "being charged" with being materially deficient. Although the letter does not specify that petitioner had a right to a hearing pursuant to the Employee Handbook, we note that the guidelines detailed therein did not specify that such process must be detailed in a charge furnished to an employee. We further note that there is no evidence in the record disputing petitioner's knowledge of these provisions or that he was furnished with a copy of such handbook.

Accordingly, we find that petitioner failed to pursue his administrative remedies before seeking judicial relief. As a result of such failure, Supreme Court's judgment must be reversed and the petition dismissed.

As to all other contentions raised by the parties, we have found them to be without merit.

Mercure and Casey, JJ., concur.

Yesawich Jr., J. (dissenting). We respectfully dissent. The only issue before us is whether petitioner fully exhausted available administrative remedies before commencing this CPLR article 78 proceeding, which in turn depends upon whether he was, in fact, entitled to a hearing, and if so, whether Supreme Court was correct in concluding that a request for one would have been futile.

Although respondent's "Progressive Discipline Procedures" (hereinafter the 1989 procedures), read in conjunction with other provisions in the Employee Handbook to which they were appended, indicate that an employee presented with charges and a proposed penalty is entitled to a hearing if a request is made within five days, those procedures do not necessarily apply where discipline is purportedly imposed as a result of a material deficiency in performance. A preface to the 1989 procedures unambiguously states that when such a deficiency is found, as it was in this case, if the procedures set forth in a 1987 policy statement (hereinafter the 1987 procedures)—which include informal and formal counseling, development of a work plan, and repeated evaluation of perfor-

mance—are utilized, failure to follow the 1989 procedures does not bar the imposition of discipline. Respondent apparently attempted to follow the 1987 procedures, which make no provision for a hearing, only to be thwarted by petitioner's refusal to cooperate; be that as it may, respondent, in its answering papers and in its brief on appeal, has repeatedly argued that it followed the 1987 procedures with regard to petitioner's termination, and that consequently the 1989 procedures did not apply. It ill-behooves respondent to now claim that petitioner should have requested the hearing provided by the 1989 procedures, after continuously asserting that those procedures were wholly inapplicable.

Moreover, given respondent's manifest belief that the 1987 procedures governed the situation, any request for a hearing undoubtedly would have been denied; in these circumstances, it would have been senseless for petitioner to have sought one (see, Esther C. v Ambach, 142 AD2d 94, 98, appeal dismissed 75 NY2d 765).

Accordingly, we would affirm Supreme Court's judgment finding that petitioner's proceeding was not barred by his failure to pursue administrative remedies, and reinstate petitioner as of June 28, 1991.

Cardona, P. J., concurs. Ordered that the judgment is reversed, on the law, without costs, and petition dismissed.