■ Barbara Coleman, by Her Attorney-in-Fact, Mazilee
Coleman, on Behalf of Herself and All Others Similarly Situated, Appellant, v Richard F. Daines, M.D., Individually and as
Commissioner of the New York State Department of Health, et
al., Respondents. [913 NYS2d 83]—

Judgment, Supreme Court, New York County (Jane S. Solomon, J.), entered March 26, 2009, denying the petition and
dismissing this hybrid CPLR article 78 and 42 USC § 1983
proceeding seeking class certification, declaratory and injunctive relief, nominal damages and attorneys' fees and costs, reversed, on the law and the facts, without costs, and the matter
remitted to Supreme Court for further proceedings consistent
with the decision herein.

On November 21, 2007 and January 23, 2008, petitioner Barbara Coleman, born July 18, 1942 and suffering from, among other things, dementia, diabetes, anxiety, agitation and joint pain, submitted an application requesting Medicaid home care services in the form of sleep-in personal care attendants, 24 hours a day, seven days a week (24/7), retroactive to December 1, 2007. Petitioner was not given notice of the availability of temporary Medicaid in the form of personal care attendant services that she claims she was entitled to pursuant to Social Services Law § 133 and article XVII, § 1 of the New York Constitution.[1]

Pending the determination of her application, petitioner moved in temporarily with her sister and attorney-in-fact, Mazilee Coleman, so that she could be "cared for in some way." Because Mazilee also cared for their mother, who suffers from severe dementia, she was allegedly overburdened and unable to adequately provide the extensive, around-the-clock care and assistance petitioner needed in the activities of daily living, including, but not limited to, ambulating, feeding, dressing, bathing and grooming. Consequently, on May 22, 2008, petitioner, who had yet to receive a determination on her Medicaid application, submitted a request pursuant to Social Services Law § 133 and article XVII, § 1 of the New York Constitution for temporary Medicaid in the form of personal care attendant services, requesting that a determination be made within 48 hours.

On May 29, 2008, petitioner received a letter from the New York City Human Resources Administration (HRA), stating that she was eligible for Medicaid, retroactive to March 1, 2008. The

---

1. Article XVII, § 1 (public relief and care) provides: "[t]he aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine." Social Services Law § 133 (temporary preinvestigation grant) provided, as of the time of petitioner's application: "[i]f it shall appear that a person is in immediate need, temporary assistance or care shall be granted pending completion of an investigation." We note that section 133 was amended (L 2010, ch 455, § 1), effective August 30, 2010, to provide: "Upon application for public assistance or care under this chapter, the local social services district shall notify the applicant in writing of the availability of a monetary grant adequate to meet emergency needs assistance or care and shall, at such time, determine whether such person is in immediate need. If it shall appear that a person is in immediate need, emergency needs assistance or care shall be granted pending completion of an investigation. The written notification required by this section shall inform such person of a right to an expedited hearing when emergency needs assistance or care is denied. A public assistance applicant who has been denied emergency needs assistance or care must be given reason for such denial in a written determination which sets forth the basis for such denial."

letter did not specify the number of hours of personal care attendant services that petitioner was entitled to.

On June 17, 2008, petitioner, by Mazilee Coleman, commenced this proceeding, on behalf of herself and three classes of persons similarly situated,[2] asserting claims pursuant to 42 USC § 1983 and CPLR article 78 against respondents Richard F. Daines, M.D., Commissioner of the New York State Department of Health (DOH), and Robert Doar, Commissioner of HRA, in both their official and individual capacities.

In the first and second causes of action respectively, petitioner alleged that by failing to render and implement a determination as to how many hours of Medicaid-funded personal care attendant services she and class C members were entitled to in a timely manner, Commissioner Doar violated: (i) 42 USC § 1983 in that he violated 42 USC § 1396a (a) (8) and 42 CFR 435.911 (a); and (ii) 18 NYCRR 360-2.4 (a), which may be addressed through CPLR 7803 (3) and an implied right of action.

In the third, fourth and fifth causes of action respectively, petitioner alleged that by failing to give notice pursuant to Social Services Law § 133 and article XVII, § 1 of the New York Constitution of the availability of temporary Medicaid in the form of personal care attendant services to petitioner and class A members, respondents violated: (i) 42 USC § 1983 in that

---

2. Petitioner defined class A as "[a]ll individuals who have been within three years prior to the filing date of the [verified petition], are now or may in the future be residents of New York State who have applied, are applying, or will be applying for Medicaid, who were not, are not or will not be given notice that they are entitled to apply for temporary Medicaid services in the form of personal care attendant services, as described in 18 NYCRR 505.14, pending the investigation and ultimate determination of their qualification for Medicaid funded personal care attendant services." Class B was defined as "[a]ll individuals who have been within three years prior to the filing date of the [verified petition], are now or may in the future be residents New York State, in 'immediate need' within the meaning of Social Services Law § 133, of Medicaid funded personal care attendant services, as described in 18 NYCRR 505.14, who were not, are not or will not be given notice that they are entitled to apply for temporary Medicaid services in the form of personal care attendant services pending the investigation and ultimate determination of their qualification for Medicaid funded personal care attendant services, and who were not provided with such temporary Medicaid services." Class C was defined as "[a]ll individuals who have been within three years prior to the filing date of the [verified petition], are now or may in the future be residents of New York City, who have submitted or will submit Medicaid applications to HRA requesting Medicaid personal care attendant services pursuant to 18 NYCRR 505.14, where the determination of the number of hours of personal care attendant services to which they are entitled has not been made and implemented in a timely manner by HRA as required by 42 USC § 1396a (a) (8), 42 CFR 435.911 (a) and 18 NYCRR 360-2.4 (a)."

they violated the Due Process Clause of the 14th Amendment to the United States Constitution, (ii) the Due Process Clause of the New York Constitution; and (iii) 18 NYCRR 351.1 (b), 350.7 (a) and (c), and 42 CFR 435.905, which may be addressed through CPLR 7803 (3) and an implied right of action.

In the sixth cause of action, petitioner alleged that by failing to render a decision on her request for temporary medical assistance and by failing to provide services, respondents violated Social Services Law § 133 and article XVII, § 1 of the New York Constitution, which may be addressed through CPLR 7803 (3). In the seventh cause of action, petitioner alleged that by failing to render that decision within 48 hours and to provide the services the day after the decision, respondents violated the same provisions, which may be addressed through CPLR 7803 (3) and an implied right of action.

Based on these causes of action, petitioner requested class action certification; injunctive relief requiring respondents to make a timely determination as to the number of hours of Medicaid-funded personal care services to which applicants are entitled and to provide class members with notice of the availability of temporary Medicaid; a declaration of illegality regarding the policy not to provide notice; and nominal damages for petitioner and class members for the violation of their due process rights. The State respondent answered the petition, admitting that it is the policy and practice of respondents not to provide or pay for temporary Medicaid in the form of personal care attendants or apprise applicants of the availability of same under Social Services Law § 133. The City respondent filed a cross motion to dismiss.

On June 18, 2008, the Supreme Court directed respondents to determine, by June 30, 2008, the extent of petitioner's entitlement to Medicaid-funded personal care services and to have a plan for implementing services. On June 26, 2008, HRA authorized personal care services for petitioner 24/7. HRA did not determine her request for retroactivity to December 1, 2007. On June 30, 2008, personal services for petitioner began.

In the judgment on appeal, the court denied the petition and dismissed the proceeding on the threshold grounds of mootness and failure to exhaust administrative remedies. The court held that petitioner's claims were moot because she began receiving temporary care services on June 30, 2008 and the "likely to recur" exception to the mootness doctrine was inapplicable because petitioner's circumstances differed from that of other putative class members since she was receiving personal care from her sister. While noting that petitioner had requested

Medicaid funded personal care attendant services retroactive to December 1, 2007, and that respondents had awarded her only Medicaid assistance from June 30, 2008 onward, the court found that the matter was still moot because petitioner had not requested compensatory damages. Given the dismissal of her primary claim, the court found that petitioner's request for nominal damages was of no avail since those damages were now the primary relief sought and therefore must be litigated in the Court of Claims.

Supreme Court also found that even if the "likely to recur" exception applied, the petition would have to be dismissed because petitioner failed to exhaust her administrative remedies when she did not request a fair hearing. The court found that no exception to the exhaustion rule applied because (i) petitioner did not allege that the agency acted beyond its grant of power; (ii) petitioner's constitutional claim requires the resolution of factual issues; (iii) there is no indication that resort to a fair hearing would be futile because there are factual issues relating to the manner in which petitioner's application was processed; and (iv) petitioner did not face irreparable harm since she was being cared for by her sister. The court rejected petitioner's argument that administrative remedies did not have to be exhausted for her section 1983 claim, finding that because the claim would be entirely dependent on the fair hearing findings, the failure to exhaust administrative remedies also rendered those claims inappropriate for judicial review.

Based on this determination, Supreme Court did not reach the merits of any of petitioner's causes of action.

We now reverse, reinstate the petition and remit for further proceedings.

"As a general principle, courts are precluded 'from considering questions which, although once live, have become moot by passage of time or change in circumstances' " (City of New York v Maul, 14 NY3d 499, 507 [2010], quoting Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]). An exception to the mootness doctrine exists where there is "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues" (Matter of Hearst Corp. v Clyne, 50 NY2d at 714-715; see Matter of Jones v Berman, 37 NY2d 42 [1975]).

In Maul, a suit was brought against city and state agencies for failure to provide services and placement to developmentally disabled minors in foster care. The city agency argued that the

claims were moot because it had now provided the necessary services. The Court of Appeals disagreed, stating that the plaintiff fell with the exception to the mootness doctrine for "issues [that] are substantial or novel, likely to recur and capable of evading review" (*Maul* at 507). In *Jones,* the Court of Appeals similarly held that the issue of the provision of emergency public assistance was not moot even though the petitioner was receiving public assistance at the time of the appeal because "the questions presented [were] of importance and interest and because of the likeliness that they will recur" (*Jones* at 57). Here too, as in *Maul* and *Jones,* all of the elements of the "likely to recur" exception to the mootness doctrine are present and the proceeding should not have been dismissed on that basis (*see Matter of Rodriguez v Wing,* 94 NY2d 192, 196 [1999]; *Konstantinov v Daines,* 2009 NY Slip Op 30973[U] [Sup Ct, NY County 2009]).

First, the petition challenges respondents' policy (i) not to notify Medicaid applicants of the availability of temporary Medicaid in the form of personal care attendants, (ii) not to provide or pay for temporary Medicaid benefits in the form of personal care attendants, and (iii) not to render a decision on requests for temporary medical assistance in the form of personal care attendants within 48 hours of such request and to provide the temporary Medicaid assistance the next day. Since this policy applies to other similarly situated Medicaid applicants and recipients, it is "likely to recur."

That petitioner's sister endeavored to provide some level of temporary care for petitioner does not alter this analysis. Petitioner's sister was also caring for their mother and allegedly could not provide petitioner with adequate care. Thus, it cannot be said that her provision of services, in and of itself, obviated the need for temporary Medicaid benefits in the form of personal care attendants and distinguished petitioner from other class members. Indeed, the challenged policy would apply whether the applicant or recipient has or does not have someone to care for him or her in the interim and it is not uncommon or unusual for family, friends or neighbors of a disabled individual to attempt, despite the strain it places upon them, to provide temporary care until appropriate care becomes available.

Second, the issues are substantial and of public importance. Respondents' policy regarding notice and the availability of temporary services may negatively impact on the health and welfare of a substantial number of Medicaid applicants in need of personal care attendants, even if those attendants are not providing medical services.

Third, the issues are capable of evading review since applicants may receive the determination on their ultimate eligibility for Medicaid in the form of personal care attendants under Social Services Law § 133 before the issue of temporary eligibility comes before a court.

Accordingly, the proceeding should not have been dismissed as moot. Nor should the proceeding have been dismissed on the ground that petitioner failed to exhaust administrative remedies.

"[O]ne who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law" (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]). "The exhaustion rule, however, is not an inflexible one. It is subject to important qualifications. It need not be followed, for example, when an agency's action is challenged as either unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy would be futile or when its pursuit would cause irreparable injury" (*id.* [citations omitted]). Exhaustion is also not required where only an issue of law is involved (*see Apex Air Frgt. v O'Cleireacain*, 210 AD2d 7 [1994], *lv denied* 86 NY2d 712 [1995]), or where the issue involved "is purely the construction of the relevant statutory and regulatory framework" (*Matter of Herberg v Perales*, 180 AD2d 166, 169 [1992]; *see also McKechnie v Ortiz*, 132 AD2d 472, 473 [1987], *affd* 72 NY2d 969 [1988]).

Here, petitioner argues that she was entitled, pursuant to rights granted by the Federal and State Constitutions and Social Services Law § 133, to notice of a right to temporary Medicaid benefits and to the benefits themselves. In opposition, the State respondent argues that the relief petitioner seeks is "contrary to federal and State Medicaid law, regulations and policy, a basic tenet of which is that covered medical care and services are furnished only to Medicaid recipients who have been determined eligible for such benefits"; that Social Services Law § 133 does not broadly invest all Medicaid applicants with a right to Medicaid-funded personal care prior to any investigation of their eligibility for such benefits; that no authority exists for temporary Medicaid, which would jeopardize federal monies and intensify the State's fiscal woes; and that the relief is unnecessary because the State accommodates a person's immediate need for medical care through the Department of Health's personal care regulation (18 NYCRR 505.14 [b] [5] [iv]). In moving to dismiss, the City respondents argue, among other things, that Commissioner Doar is required to follow Commis-

sioner Daines's interpretation of the state scheme for medical assistance.

Thus, because this dispute turns on the construction of the relevant constitutional, statutory and regulatory framework, rather than a substantive factual dispute between the parties relating to the extent of personal care that petitioner requires or is entitled to, the matter falls within the exceptions to the exhaustion of administrative remedies doctrine (*see Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation*, 87 NY2d 136, 140-141 [1995] [exhaustion not required where further administrative steps would be futile in light of a firm statement of agency policy]; *G. Heileman Brewing Co. v New York State Liq. Auth.*, 237 AD2d 203 [1997] ["the motion court correctly invoked settled law that, where no factual issue is raised, a declaratory judgment action may be maintained to challenge the validity or application of a particular statute without exhausting administrative remedies" (internal quotation marks and citation omitted)]; *Matter of Amsterdam Nursing Home Corp. v Commissioner of N.Y. State Dept. of Health*, 192 AD2d 945, 947 [1993], *lv denied* 82 NY2d 654 [1993] [an administrative proceeding would be futile when the challenge is to the methodology the agency uses rather than the way in which the methodology was applied in a particular case]; *Matter of Herberg v Perales*, 180 AD2d at 169; *Konstantinov v Daines*, 2009 NY Slip Op 30973[U], *7 [2009] ["the issues of whether respondents are required to provide petitioner with pre-investigative personal care services, and whether the ALJ is required to determine the personal care services at the fair hearing, are issues of law that involve the construction of the statutory and regulatory framework of the Medicaid program for the determination of applications in connection with personal care attendant services and therefore exhaustion of administrative remedies is not mandated"]).

Resort to a fair hearing would also be futile inasmuch as the hearing officer would be required to follow the established agency policy that petitioner seeks to challenge, which did not provide for notice of the right to temporary Medicaid benefits in the form of personal care attendant services or for the right to those benefits themselves under Social Services Law § 133, as it existed as of the date the petition was filed.

Accordingly, the judgment is reversed and the matter remitted to Supreme Court to address the arguments raised in the petition and cross motion to dismiss that had not been reached due to the dismissal on the threshold grounds of mootness and failure to exhaust administrative remedies. Concur—Andrias, Abdus-Salaam and Manzanet-Daniels, JJ.

Tom, J.P., and Sweeny, J., dissent in a memorandum by Tom, J.P., as follows: This CPLR article 78 proceeding asserts that respondents acted in contravention of Social Services Law § 133 as well as federal and state law governing the grant of personal care attendant services, resulting in violation of petitioner's civil rights under 42 USC § 1983. It seeks class action status on behalf of applicants who were not provided with temporary personal care attendant services because (A) the applicant had no notice of their availability or (B) temporary services were not made available despite the applicant's immediate need or (C) no determination was made as to the number of hours such services would be provided.

In late January 2008, petitioner's attorney filed an amended Medicaid application on her behalf, including a cover letter explaining that her original application had incorrectly reflected that she owned, rather than rented, her residence. In late May, the attorney sent another letter demanding that petitioner "be immediately awarded temporary medical assistance in the form of personal care attendants, 24 hours, 7 days a week" while her application was being processed. A week later, by notice dated May 29, 2008, petitioner was informed that her application had been accepted and that she had been approved for "Community Coverage With Community-Based Long-Term Care." However, the notice did not indicate the number of hours that personal care attendant services would be provided. While the notice indicated that review of the determination was available by way of a fair hearing, petitioner did not seek administrative review but filed this verified petition on June 16, 2008. On the following day, she obtained an order to show cause directing respondents to issue an expedited determination, which culminated in their authorization of 24-hour-a-day, seven-day-a-week home attendant services on June 26.

Respondents' authorization of around-the-clock home attendant services rendered moot petitioner's claims for declaratory and injunctive relief (*Pastore v Sabol*, 230 AD2d 835 [1996]), and the inclusion of a claim for nominal damages does not preserve the petition's viability. Respondents are not liable for money damages under 42 USC § 1983. Moreover, they cannot be sued in their personal capacities unless they were personally involved in wrongdoing (*K & A Radiologic Tech. Servs., Inc. v Commissioner of Dept. of Health of State of N.Y.*, 189 F3d 273, 278 [2d Cir 1999]).

Additionally, the failure to request a fair hearing renders the petition defective. Generally, "one who objects to the act of an administrative agency must exhaust available administrative

remedies before being permitted to litigate in a court of law" (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]). Though subject to qualification where an agency's determination is challenged on a significant constitutional ground (*id.*), the absence of an administrative record in this matter precludes assessment of whether the constitutional claim is substantial (*see Banfi Prods. Corp. v O'Cleireacain*, 182 AD2d 465, 467-468 [1992]). "A constitutional claim that may require the resolution of factual issues reviewable at the administrative level should initially be addressed to the administrative agency having responsibility so that the necessary factual record can be established" (*Matter of Schulz v State of New York*, 86 NY2d 225, 232 [1995], *cert denied* 516 US 944 [1995]). Here, petitioner failed to exhaust her administrative remedies before resorting to court intervention, and never even requested a fair hearing under 18 NYCRR 358-3.1. Even though petitioner claimed that respondents violated her constitutional rights, the petition presented factual questions requiring administrative review. It is uncontroverted that other exceptions to the exhaustion rule are inapplicable (*see Watergate II Apts.*, 46 NY2d at 57).

Petitioner's claim is predicated on Social Services Law § 133, which establishes "the availability of a monetary grant adequate to meet emergency needs assistance or care" when it is determined that an applicant "is in immediate need." The Medicaid application form recognizes the potential for emergency assistance and duly elicits the pertinent information. While petitioner's application reflects her request for "Medical Assistance" for a "Serious Medical Problem" and indicates that she "[n]eeds home care," there is no entry in that portion of the application devoted to emergency cash assistance, which specifically asks, "Is there an immediate need?" Finally, petitioner's application lists a significant asset in the form of a tax-sheltered retirement account.

The requirement that administrative remedies be exhausted "furthers the salutory [*sic*] goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . and affording the agency the opportunity, in advance of possible judicial review, to prepare a record reflective of its 'expertise and judgment' " (*Watergate II Apts.* at 57, quoting *Matter of Fisher [Levine]*, 36 NY2d 146, 150 [1975]). In view of the agency's timely award of home attendant services upon receipt of counsel's request for temporary assistance in May 2008, factual questions appropriate to determination in a fair hearing are raised with respect to whether petitioner's application sought a monetary grant and, if so, whether it indicated a need

for the immediate assistance contemplated by Social Services Law § 133.

Petitioner's claims under 42 USC § 1983 were properly dismissed. Such claims must be subject to determination as a " 'purely legal' question" and ripen only when an official authorized to make the determination takes action that inflicts injury (*see Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510, 519 [1986], *cert denied* 479 US 985 [1986]). In the absence of an administrative record, no injury is demonstrated as a result of delay in awarding home attendant services or the failure to specify the hours such services would be provided. In order to state a claim under 42 USC § 1983, a petitioner must allege conduct, by a person acting under color of law, that deprives "the injured party of a right, privilege or immunity guaranteed by the Constitution or the laws of the United States" (*DiPalma v Phelan*, 81 NY2d 754, 756 [1992]). No such federal right is even argued here. Petitioner alleges only that her right to temporary Medicaid benefits, and to notice thereof, was violated under state law. Even to the extent petitioner asserts a federal constitutional right to notice, such an assertion is based solely on her allegations of wrongdoing under Social Services Law § 133, and the failure to request a fair hearing likewise precludes review of that claim.

*City of New York v Maul* (14 NY3d 499 [2010]), relied upon by the majority, does not require a different result. That case involved the failure to supply services mandated by statute to developmentally disabled children already under the care of New York City's Administration for Children's Services who were denied permanency planning and placement (*id.* at 504). Here, the petition concerns only an omission in an award notice (failing to specify the number of hours of attendant care services to be provided) and an alleged failure to afford notice that such services are available on an interim basis while a Medicaid application is pending (despite a question on the application form specifically addressing the issue). Thus, unlike *Maul*, the instant matter does not concern the deprivation of statutorily mandated services to persons *already* entitled to receive them but, rather, the *initial* determination of petitioner's entitlement to statutory benefits, a question entrusted to the administrative agency in the first instance (*Watergate II Apts.*, 46 NY2d at 57).

Accordingly, the judgment should be affirmed. **[Prior Case History: 2009 NY Slip Op 30643(U).]**