OPINION OF THE COURT
Marcy S. Friedman, J.
In this CPLR article 78 proceeding, petitioners Martha Moreta and her daughter, Johanna Moreta, challenge respondents’ termination of a Section 8 rent subsidy or voucher for apartment D19D at 3333 Broadway in Manhattan (subject apartment), in which they resided together until Martha’s vacatur. Petitioner Johanna Moreta claims entitlement to the subsidy as a remaining family member. Respondents oppose the petition on the ground that petitioners failed to exhaust administrative remedies and, in the alternative, on the merits.
The undisputed facts are as follows: On January 31, 2005, the United States Department of Housing and Urban Development (HUD) issued a voucher, under the Housing Choice Voucher Program, to Martha Moreta as “Family Representative,” with Johanna Moreta named as a member of the household. (Answer to amended verified petition [answer], exhibit B.) After the voucher was issued, respondent New York City Department of Housing Preservation and Development (HPD), as the administering agency, entered into a Housing Assistance Payments (HAP) contract with Riverside Park Community, LLC, the owner of the building in which the subject apartment is located. (Id., exhibit C.) The contract provided for HPD to pay a portion of petitioners’ rent directly to the owner. (Id. If 7.) On January 22, 2009, petitioner Martha Moreta timely completed an annual Section 8 recertification package. (Id., exhibit E.) By request for additional information, dated February 10, 2009, HPD sought pay stubs for Johanna, and asset and employment information as well as bank account statements for Martha. (Id., exhibit F.) By pretermination notice of Section 8 noncompliance, dated February 27, 2009 and addressed to Martha, HPD stated: “[Y]our Section 8 rent subsidy may be terminated for the reason(s) checked below: . . . You failed to provide the following document(s): current paystubs for Johanna (3 for biwkly — 6 for wkly),” and information regarding Martha’s bank accounts and employment. (Id., exhibit G.) HPD subsequently received some of the documents and scheduled a conference to discuss petitioner’s participation in the program. (Id., exhibits H, I.) At or before the conference, on May 12, 2009, Martha provided additional documents and informed HPD that “daughter Johanna *566 will be next head of household,” and “effective June 1, [Martha] will be moving to 1864 Madison Street.” (HPD record {id., exhibit J].) By request for additional information, dated May 29, 2009 and addressed to Martha, HPD stated that the following documents are required “to complete your Section 8 recertification”: Proof of residence for Martha; pay stubs and federal tax information for Johanna; “management letter acknowledging Johanna as the head of household”; and a completed “Tenant Request for Termination of Subsidy.” (Id., exhibit J.) By pretermination notice of Section 8 noncompliance, dated June 17, 2009 and addressed to Martha, HPD stated: “Please be advised that your Section 8 rent subsidy may be terminated” for failure to provide the following documents: Proof of residence for Martha; management letter acknowledging Johanna as the head of household; request for termination of subsidy form; and verification of Johanna’s wages. “Most recent paystubs or complete tax return for 2008.” (Id., exhibit L.)
According to petitioners, Martha Moreta went to her landlord’s managing agent’s office in June 2009 to ask for the letter requested by HPD, and submitted requested documentation to the agent in July 2009. (Amended petition [petition] 1i 20.) Although they repeatedly contacted the agent to inquire about the letter, the agent never produced a letter acknowledging Johanna as the new head of household. (Id. 1HI 23-24.) On July 13, 2009, Martha brought to HPD the lease for her new apartment and, she alleges, six pay stubs for Johanna Moreta. (Id. 1i 21.) The HPD record of the July 13, 2009 visit reflects that she “submitted (2) notarized letters in regards to Martha leaving household, copy of lease [and] pay stubs for Johanna.” (Id., exhibit E.) In opposition to the petition, respondents acknowledge that they received a lease for Martha’s apartment at 1864 Madison Street, Ridgewood, New York, but claim that they received only four pay stubs for Johanna. (Answer 1Í 81.)
By termination or reinstatement of assistance authorization form, dated August 11, 2009, Paule Theodore, a Section 8 Coordinator at HPD, recommended that HPD terminate the subsidy. His comments stated that Martha sought to “relinquish voucher to daughter,” and that “[s]he failed to provide HPD with management letter and 3 additional pay stubs. For weekly salary we need 6 pay stubs, she only gave us 3.” (Answer, exhibit N.) HPD’s final determination, also dated August 11, 2009, by HPD Director Evelyn Ruiz, recommended that the subsidy be terminated effective September 30, 2009. This determination *567 stated: “Tenant failed to submit letter from mgt to confirm they are aware that Johanna will be the new head of household and 6 current consecutive pay stubs for Johanna.” (Id.)
The determination which is challenged in this proceeding is HPD’s notice of Section 8 rent subsidy termination, dated August 12, 2009 and addressed to Martha at the subject apartment. This determination stated: “Please be advised that your Section 8 rent subsidy will be terminated for the reason(s) checked below: You failed to provide the following document(s): letter from management accepting daughter as head of household Johanna, Johanna 6 pay stubs.” (Id., exhibit O.) The notice further stated: “You may appeal this decision at an informal hearing before an impartial HPD staff member who was not involved in making the termination decision. You may request an informal hearing by returning the attached form to HPD within twenty-one (21) calendar days.” (Id.)
It is undisputed that respondents never served notice of termination of the subsidy upon Johanna Moreta. According to petitioners, Johanna first became aware that the Section 8 subsidy would be terminated when she received a notice from the landlord, on or about November 11, 2009, stating that the subsidy had been terminated and setting forth the amount of the nonsubsidized rent. (See petition 1Í 34.) Petitioners further allege that on November 17, 2009, Martha Moreta brought this notice to HPD. Martha claims, and HPD’s record of her November 17, 2009 visit confirms, that she was informed by HPD that she must request a hearing, and was given a request for appeals. (Id. 11 35; exhibit I.) A notice entitled Section 8 informal hearing late submission, dated November 24, 2009 and addressed to Martha at the subject apartment, stated: “Your request for an informal hearing to contest the termination of your Section 8 rent subsidy is denied because it was received after the deadline for requesting an informal hearing.” (Answer, exhibit R) The notice also stated: “HPD’s termination of your Section 8 rent subsidy remains in effect. If you disagree with HPD’s decision to deny your request, you may challenge it in an appropriate judicial proceeding.” (Id.)
CPLR 7803 (3) provides that an administrative determination may be challenged on the grounds that it “was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.” (See also Matter of Arrocha v Board of Educ. *568 of City of NY., 93 NY2d 361, 363 [1999]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231-232 [1974].) In an article 78 proceeding, “a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion.” (Matter of Arrocha, 93 NY2d at 363, quoting Matter of Pell, 34 NY2d at 232 [internal quotation marks omitted]; Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 425, 428-429 [1st Dept 2007], affd 11 NY3d 859 [2008].) “Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.” (Matter of Pell, 34 NY2d at 231.)
Respondents contend that the decision to deny petitioners’ request for a hearing as untimely was not arbitrary and capricious. (Respondents’ mem of law at 6.) However, petitioners do not argue that the decision to reject Martha Moreta’s late request for an informal hearing was arbitrary and capricious. Rather, they represent that their claims “relate to the purported termination of their Section 8 subsidy on September 30, 2009.” (Petitioners’ mem of law at 2.) HPD counters that “[t]o the extent petitioner attempts to challenge HPD’s underlying decision to terminate petitioner’s Section 8 rent subsidy, such challenge is not properly before the court because petitioner failed to exhaust her administrative remedies by failing to timely request an informal hearing within the prescribed time period.” (Respondents’ mem of law at 6.)
As a general rule, a litigant may not obtain judicial review of an administrative determination without first exhausting available administrative remedies. (See CPLR 7801; Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]; Young Men’s Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371, 375 [1975].) However, the exhaustion rule is “subject to important qualifications,” and is not applicable, for example, when “an agency’s action is challenged as either unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy would be futile or when its pursuit would cause irreparable injury.” (Watergate II Apts., 46 NY2d at 57 [citations omitted].) Nor is exhaustion required where “only an issue of law is involved, or where the issue involved is purely the construction of the relevant statutory and regulatory framework.” (Coleman v Daines, 79 AD3d 554, 560 [1st Dept 2010] [internal quotation marks and citations omitted].)
*569 Petitioner Martha Moreta does not contend that any of these exceptions applies in this case. Instead, she argues that HPD’s notice of termination did not comply with due process requirements and was ineffective to terminate the subsidy because it was sent to her at the subject apartment and not at the new address of which she notified HPD. (See petitioners’ mem of law at 13.)
It is well settled that “due process requires the government to provide ‘notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.’ ” (Jones v Flowers, 547 US 220, 226 [2006], quoting Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950].) The cases cited by petitioners for the proposition that service must be made at a party’s current address, if that address is known, hold that in order to confer personal jurisdiction, service must be made in strict conformity with statutory or regulatory requirements. (See e.g. Matter of 72A Realty Assoc. v New York City Envtl. Control Bd., 275 AD2d 284 [1st Dept 2000]; Alexander Smith Carpet v Walter Arnold, Inc., 94 AD2d 643 [1st Dept 1983]; see generally Eight Assoc. v Hynes, 102 AD2d 746 [1st Dept 1984], affd 65 NY2d 739 [1985].) These cases are not conclusive of the sufficiency of HPD’s service of the notice of termination, as personal jurisdiction is not at issue.
The instant case does, however, present a close question as to whether the service was “reasonably calculated” to give notice. HPD served Martha Moreta with the notice at the subject apartment in August 2009, although it undisputedly had prior notice that Martha had moved to a new address. (Petition 1i 21, exhibit E [HPD record, dated July 13, 2009, acknowledging receipt from Martha of affidavits “in regards to Martha leaving household,” and a copy of the lease for the new apartment].) Nevertheless, the court finds that the service was sufficient under the particular factual circumstances — namely, that Martha continued to respond to the requests that HPD sent to her at the subject apartment even after she moved, and that, as of the date of service of the notice of termination, Martha remained the tenant of record of the subject apartment as well as the designated head of household on the voucher.
It is undisputed that Martha did not request a hearing within 21 days after service of the notice of termination. The court accordingly holds that her claims are barred due to her failure to *570 exhaust her administrative remedies. The court reaches a different result as to Johanna Moreta. Johanna was not served with notice of the termination of the subsidy, and had no opportunity in her own right to seek a hearing as to the termination. The court therefore does not find that her claims in the instant proceeding are barred by the exhaustion doctrine.
In so holding, the court accepts, for purposes of this decision, HPD’s contention that Johanna was not entitled to independent notice of the termination of the subsidy, and that Martha, as head of household, received notice for the family. (See respondents’ reply mem of law at 10.) However, the court rejects HPD’s implicit contention that Johanna Moreta’s rights are wholly derivative of her mother’s. On the contrary, the federal law which establishes the Section 8 program, the Housing and Community Development Act of 1974, and the implementing federal regulations, describe the beneficiaries of the program as “families.” (See 42 USC § 1437f [a]; 24 CFR 982.201 [c].) The statute thus expressly authorizes Section 8 assistance payments “[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing.” (42 USC § 1437f [a].) The regulations similarly state that for project-based programs, “rental assistance is paid for families,” and for tenant-based programs, like that here, “the assisted unit is selected by the family.” (24 CFR 982.1 [b] [1].) Although a family under the Act may consist of a single person (24 CFR 982.201 [c]) “[the] [S]ection 8 law, ... by recognizing the entire family as the tenant, seeks to encourage family cohesion.” (Matter of Manhattan Plaza Assoc., L.P. v Department of Hous. Presero. & Dev. of City of N.Y., 8 AD3d 111, 112 [1st Dept 2004] [citation omitted]; Morrisania II Assoc, v Harvey, 139 Misc 2d 651, 655-656 [Civ Ct, Bronx County 1988].) Significantly, the term “family” includes “the remaining member of a tenant family.” (42 USC § 1437a [b] [3] [A] [iv].) The regulatory framework provides strong protections to remaining family members. Under the Administrative Plan by which HPD implements the Housing Choice Voucher Program (see Administrative Plan, ch 1, part II [eff July 14, 2008] [available at http:// home2.nyc.gov/html/hpd/downloads/pdf/2008-Section-8Administrative-Plan.pdf]), a qualifying remaining family member has the right to assume the voucher after the head of household vacates the apartment. The Plan defines a “Remaining Member” as:
*571 “A family member of an assisted tenant family who remains in the unit when other members of the family have left the unit. To be considered the remaining family member of the family, the person must have been a member of the family in a current or prior certification of the family composition during the family’s participation in the program, and previously approved by HPD to live in the unit.” (Ch 5, part I [“Definitions of Family and Household Members”].)
The Plan further provides:
“In the event that the head of household moves out of the assisted unit or dies, a remaining adult household member (without children) may retain use of the tenant-based voucher if that adult has been part of the household for at least six months, is in compliance with all program rules and regulations and meets all other program eligibility and continued occupancy requirements.” (Id. [“Family Break-Up”].)
It is undisputed that Johanna Moreta was identified as the only other member of the family in the 2004 application by Martha Moreta for the voucher (answer, exhibit B); that Johanna has been a household member since award of the voucher to the family; and that she was included in the last recertification that Martha filed for the apartment in January 2009 (answer, exhibit E), prior to Martha’s moving out of the apartment. As required by the Administrative Plan, she was thus a member of the family in the current certification of family composition, was “previously approved by HPD to live in the unit,” and was “part of the household for at least six months.” (Administrative Plan ch 5, part I.) Had Martha Moreta not attempted to comply with HPD procedures by seeking transfer of the subsidy to Johanna and, instead, simply moved out of the apartment, Johanna would therefore have had a strong claim of entitlement to retain the voucher as a remaining family member.
Respondents contend that Johanna “does not have an automatic right to a Section 8 subsidy or to the transfer of petitioner Martha Moreta’s Section 8 subsidy to her name,” and that transfer of the subsidy from one family member to another requires the consent of the landlord and execution of a new HAP contract in the new head of household’s name. (Respondents’ reply mem of law at 8.) To the extent that HPD’s argument is that Johanna’s right to assume the voucher as a remaining family member is barred by Martha Moreta’s failure to *572 produce a letter from the landlord agreeing to the tenancy, this contention is without merit. It ignores that Johanna’s rights are not wholly derivative of Martha’s, and that if Martha had done nothing, Johanna would have had the opportunity to show her entitlement to succeed to the voucher as a remaining family member. The federal regulations “do not mandate any procedure with respect to eviction of tenants in section 8 housing.” (Manhattan Plaza Assoc., 8 AD3d at 112; see 24 CFR 982.552.) Moreover, the Administrative Plan does not explicitly provide a right to a hearing before HPD for a person whose claim of entitlement to succeed to a subsidy as a remaining family member is denied. (See Administrative Plan 16.1 [“Informal Review for Applicants”].) However, a person claiming family member status upon the vacatur of the head of household is unquestionably afforded an opportunity for review by means of an article 78 proceeding challenging the agency denial of the transfer of the subsidy (see Matter of Evans v Franco, 93 NY2d 823 [1999] [review of denial of succession claim to tenant-based Section 8 subsidy]; Matter of Gill v Hernandez, 22 Misc 3d 390 [Sup Ct, NY County 2008] [same]) or by way of a defense to an eviction proceeding. (See e.g. 2013 Amsterdam Ave. Hous. Assoc. v Estate of Wells, 10 Misc 3d 142[A], 2006 NY Slip Op 50084[U] [App Term, First Dept 2006] [defense of right to succeed to analogous project-based Section 8 subsidy]; Bronx 361 Realty, L.L.C. v Quinones, 26 Misc 3d 1231 [A], 2010 NY Slip Op 50334[U] [Civ Ct, Bronx County 2010] [same].)
Given the clearly expressed federal purpose, discussed above, of providing Section 8 benefits to families as a whole, and the strong protections afforded under the regulatory framework to remaining family members, Johanna Moreta cannot be found to be without any right to challenge the termination of her family’s Section 8 subsidy. Put another way, she cannot be in a worse position, in terms of her right to remain in her home and to continue to receive the subsidy, because her mother attempted to follow HPD procedures for transfer of the subsidy to her, than she would have been in had her mother simply moved out of the apartment. Such a result would, indeed, be arbitrary and capricious. As Johanna Moreta had no opportunity to challenge the termination of the subsidy, her claim is not barred by a failure to exhaust administrative remedies.
The court accordingly turns to the merits of HPD’s determination. As noted above, HPD terminated the subsidy based on Martha Moreta’s failure to provide a letter from her landlord *573 accepting Johanna as head of the household, and failure to provide six pay stubs for Johanna. (Notice of termination [answer, exhibit G].) Martha unquestionably lacked control over whether, or when, the landlord issued the letter, although she does claim that she made repeated unsuccessful efforts to obtain the letter. (See petition HIT 23-24.) She also brought pay stubs for Johanna to HPD, although HPD disputes whether she brought the requisite number. (See answer, exhibits M, N.) The court notes parenthetically that the record contains evidence that the landlord has now agreed, as petitioners contend it was required to do by federal law, to accept Johanna as the tenant under the Section 8 lease. (Petition, exhibit M [e-mail from landlord’s attorney to petitioners’ attorney, dated July 8, 2010].) The record also includes six pay stubs for Johanna for the period prior to the termination of the subsidy, showing that Johanna qualifies as a low-income wage earner. (Id., exhibit H.)
It is the long-standing law of New York that an agency determination imposing a penalty will be set aside as an abuse of discretion “if the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness.” (Matter of Pell, 34 NY2d at 233 [internal quotation marks and citation omitted].) Termination of a Section 8 subsidy has been held “shockingly disproportionate to the offense” where the tenant has failed to accurately report household income or composition. (See Matter of Williams v Donovan, 60 AD3d 594, 595 [1st Dept 2009]; Matter of Gray v Donovan, 58 AD3d 488 [1st Dept 2009]; Matter of McIntosh v New York City Hous. Auth., 2010 NY Slip Op 30213[U] [Sup Ct, NY County 2010].) Such misreporting affects the administering agency’s ability to accurately calculate subsidies and has a direct impact on the use of public funds. Here, in contrast, petitioners did not misreport household income or composition, and HPD does not suggest that they obtained any benefit to which they were not entitled. At worst, Martha Moreta produced three or four, as opposed to six, pay stubs for Johanna, and failed to produce a letter, over which she had no control, from the landlord accepting Johanna as the tenant.
Under the federal regulations, in determining whether to terminate assistance, HPD was authorized to
“consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigat *574 ing circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.” (24 CFR 982.552 [c] [2] [i].)
HPD wholly failed to do so. Under all the circumstances, the court holds that HPD’s termination of the subsidy was shockingly disproportionate to the offense.
It is accordingly hereby ordered that the petition is granted, and HPD’s Section 8 rent subsidy termination, dated August 12, 2009, is hereby vacated and annulled; and it is further ordered that the matter is remanded to HPD for proceedings consistent with this decision — namely, processing of petitioner Johanna Moreta’s request to assume the Section 8 voucher for apartment D19D at 3333 Broadway, New York, New York, and reinstatement of the voucher retroactive to the termination date, on condition that Johanna Moreta meets all program eligibility and continued occupancy requirements pursuant to HPD Administrative Plan chapter 5.